### FORT WORTH & DENVER CITY RAILWAY COMPANY v. MAGGIE WRENN.

#### Decided March 18, 1899.

1. **Allegata and Probata.**

The averment in a petition that defendant negligently permitted the track upon which deceased was moving to "become obstructed" by an overhanging car on an adjoining track, may be established either by evidence that the car was left overhanging the track, or left clear and afterwards rolled so as to overhang the track.

2. **Master and Servant—Assumed Risks.**

A railway brakeman while assuming the ordinary risks usually incident to the business, does not assume any risks growing out of the negligence of those whom it is his duty to obey.

3. **Same—Danger Obvious to Master Only.**

When the servant is called upon by the master to perform a task outside of his usual employment, he only assumes those dangers of which he has knowledge, or which are as obvious to him as they are to the master or vice-principal.

**4. Proximate Cause—Collision of Cars.**

Where an engineer who was, without any fireman, operating a switch engine with a car in front of it, saw another car overhanging the track ahead while sixty feet away from it, and could by exercising reasonable diligence have stopped before reaching it, the operation of the engine without a fireman was not the proximate cause of the collision.

APPEAL from Tarrant. Tried below before Hon. W. D. HARRIS.

*Stanley, Spoonts & Thompson,* for appellant.

*Wm. D. Williams* and *R. L. Carlock,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Maggie Wrenn, against appellant to recover damages occasioned by the death of her husband, John Wrenn, on the 2d day of October, 1896, who was an engine wiper in the employ of appellant in its yards at Fort Worth, Texas. The death was caused by the collision of a box car, which was being pushed in front of a switch engine in charge of the hostler, with no fireman on the same, coming in collision with another box car standing on a transfer track connected with appellant's track but overhanging the track on which the engine was moving. The deceased was acting as a switchman at the time, and was riding on the front foot board of the engine, so that, when the collision occurred, he was caught between the box car which was being pushed and the engine, and crushed to death.

The petition alleges that the appellant and those of its employes in authority over him, and who had ordered him to do the work he was engaged in when killed, were negligent in attempting to operate the engine without a fireman, and with only one man on the engine so that a proper lookout ahead could not be kept and obstructions discovered and collisions avoided; that the man in charge of the engine was only a hostler, and not an engineer, and was incompetent to handle an engine and do the work they were engaged in, and that he did not keep a proper lookout ahead for obstructions, and was operating the engine at a dangerous rate of speed; and that defendant was also negligent in allowing the track to become and be obstructed, by reason of all which the injury and death occurred.

The appellant pleaded the general issue, contributory negligence, and assumed risks, as follows: "Further answering herein, defendant says that the deceased, John Wrenn, was an old and experienced railroad man, and was thoroughly familiar with the duties of handling an engine and switching cars, and of the necessity of keeping a lookout, and of the proper number of men to handle an engine in switching in the yards, and that if there was only one person on said engine at the time of the said accident, that it was by reason of the fault of said deceased, because he had been requested to go on said engine and keep a lookout on the left side thereof and assist in handling the same in passing through said yards. That the services he was called upon to perform were a part of his duties, and that he neglected and refused to go on said engine or keep a

lookout on the left hand side thereof, and if said accident was in anywise contributed to by the failure to keep a lookout on said side, it was caused by the failure of deceased to discharge his duties as required of him, and as requested at his hands just immediately preceding the accident. That had he been at his post and kept said lookout, he could have ascertained whether there was any danger ahead of said engine, and controlled the movements of said engine in such a way as to have prevented said collision; that said collision, therefore, was the direct result of the failure of said deceased to perform his duty just prior to the time of said alleged accident. That said hostler was not in any wise incompetent to perform the duties of switch engineer, as the same was a part of his customary and usual duties, and that his capacity as an engineer was fully known to said deceased at the time he went out with said hostler to assist in handling said cars and switching the same in the yards. That said deceased was fully advised of all said matters, and any risk arising from the manner in which the engine was being operated; the number of employes on it, the competency or incompetency of the men in charge thereof, the rate of speed at which it was being run, and the character of work in which deceased was engaged at said time, were fully known to him and were risks assumed by him in entering said service, and if the death of the said John Wrenn was caused by reason of any of the said alleged acts, the same resulted from the risks incident to the service in which he was engaged, and not from any negligence on the part of this defendant."

The jury found a verdict for the appellee for $4250, upon which judgment was rendered, and the appellant is here seeking a reversal thereof.

The facts disclosed by the record are as follows:

John Wrenn was about 35 years old, and was on the 2d day of October, 1896, the husband of appellee. They had no children. He was on that day in the employ of appellant as an engine wiper in the roundhouse of appellant at Fort Worth, Texas, but was required by those in authority over him to act temporarily as switchman and car coupler in moving a car from the repair track to the roundhouse, and was killed while performing that duty.

Al Reeder was a hostler, and was in charge of the engine as engineer. He had the power and authority to order deceased to assist him in transferring cars from the repair track to the roundhouse, which they were doing at the time the injury occurred, and he had ordered deceased to assist him in making the transfer, and it was the duty of deceased to obey him. The evidence tends to establish that in doing such work two men, an engineer and a fireman, ought to be in the cab on the engine, and one man ought to ride on the footboard to throw switches and couple and uncouple cars.

When Reeder called deceased to assist him he went to a switch and threw it open to let the engine in on the repair track, and after coupling the front of the engine to the car required to be moved he stepped on the front footboard of the engine to ride to the turntable. Reeder knew he was there, and it was the proper place for him to be in doing the switch

work and coupling then required of him. The track on which the engine was moving was level and straight for 100 yards, and there was nothing to prevent Reeder from seeing obstructions on his track ahead of him, and he saw the car with which he collided when the car he was pushing was within sixty feet of it, but his best judgment was that it did not overhang his track. He thought his track was clear. There was some evidence tending to establish that the car struck moved towards the track on which the engine was moving just before the collision. There is no evidence that Wrenn saw the cars or knew of the danger he was in.

Wrenn had worked in the round house of appellant as an engine wiper for from two to four years, it seems, but had done very little, if any, switching and car coupling. His duty was to clean the engines and coal them, and see that they were in proper shape and properly supplied for the road, and to assist the hostler in taking them from the trains to the roundhouse and back to the trains. (It does not distinctly appear that he knew there was no fireman on the engine.) The utmost extent of the evidence on this point was Reeder's testimony, and he only says he called him to come and get on the engine with him and help him move some cars, but he admits that he did not know whether he heard him request him to get on the engine or not. Upon being called he walked to the switch and threw it, and got on the front footboard ready to throw another one. That was his proper place when engaged in switching and coupling and uncoupling cars. Nor does it distinctly appear that he knew and appreciated the danger of operating an engine in such business with one man only in the cab, even if he knew there was only one there. He did not know of the obstructed track which caused his death.

The proximate cause of his death was either the carelessness and negligence of Reeder, who in this instance was his vice-master, in failing to see that his track was obstructed, and in recklessly running his engine upon the overhanging and obstructing car, or the negligence of Jones, appellant's switch foreman, in leaving the car overhanging the track or not sufficiently secured to prevent it from rolling on the track, or the negligence of both Jones and Reeder. By the death of her husband, caused as above set forth, the appellee was damaged in the sum found by the jury.

The first, second, and third assignments of error are overruled, because the charges asked, the refusal of which is complained of, were sufficiently and substantially given in the court's main charge and the requested charge number 1 given at the instance of appellant.

The sixth assignment is overruled, because the charge complained of was warranted by both the petition and the evidence. The petition alleged that the defendant negligently permitted the track upon which deceased was moving to *"become obstructed."* Under that allegation, it would make no difference whether the car was left overhanging the track, or left clear and afterwards rolled on the track. In either case, at the time of collision it is evident it had *"become obstructed,"* and the master

is bound to use ordinary care to furnish his switching crew a clear and safe track.

We overrule the fifteenth assignment of error, because we think the evidence is amply sufficient to support the verdict.

The sixteenth assignment is also overruled, because, while a servant assumes the ordinary risks usually incident to the business he is engaged in, yet he does not assume any risks growing out of the negligence of the master or of those whom it is his duty to obey, and he had a right to assume that when he took his position on the footboard by the knowledge and assent of the engineer, if not by his order, where it was his duty to be engaged in throwing switches and coupling and uncoupling cars, the vice-master who stood in the cab with his hand on the throttle would not recklessly and negligently jeopardize his life, but would use such care and caution as an ordinarily prudent and cautious man would use in avoiding collisions, and he had the right also to assume that the track would be kept clear and safe.

The seventh, eighth, eleventh, and thirteenth assignments of error complain of the court's charge wherein the jury were instructed, in effect, as follows:

The seventh paragraph informed the jury, in effect, that if it was the negligence in Reeder and Holleran to attempt to transfer the car with an insufficient force on the switch engine, the plaintiff would be entitled to recover unless such act was attended with danger, and that such danger was as well known and as apparent to Wrenn as it was to Reeder and Holleran, and that Wrenn without objection went on with the work.

The eighth informed them that if the danger of operating the switch engine in removing the car with only two hands on the engine was as well known or as apparent to Wrenn as to Reeder and Holleran, and he proceeded to assist in the work without objections, then he assumed the risk of doing it that way and could not recover.

The eleventh informed them that Wrenn assumed the risk of danger of doing the work with an insufficient force on the engine, if such danger was as well known or as apparent to him as to anyone whose direction he was under.

The thirteenth informed them that if Wrenn was unaware of the danger of moving the car with only two hands, and the danger was not as apparent to him as to Reeder and Holleran, then he did not assume the risk of such danger unless the helping to move engines and cars was a part of the duties he was engaged to perform, and he knew that it was the practice to do such work with only two hands.

These four paragraphs of the court's charge, in our opinion, present the most serious question in the case, and the only one which has given us any trouble. It is not complained that the repetition of the same idea caused any injury, for this seems to have been done in presenting different phases of the issue of assumed risks, but the complaint is principally that they raise the question of comparative knowledge and ap-

preciation of the dangers between the master and the servant, and for this reason are erroneous.

The authorities cited by appellee to support this charge are Railway v. Lempe, 59 Texas, 19; Railway v. Bonnett, 38 Southwestern Reporter, 816; same case by Supreme Court, 89 Texas, 72; Railway v. French, 86 Texas, 98; Railway v. Fowler, 56 Texas, 452; Thompson on Negligence, p. 976, sec. 7.

The rule seems to be that the adult servant assumes all the ordinary risks of danger usually incident to the service he has contracted to perform, but not those incident to the performance of some act which was not in the line of his duty, but which the master or vice-master has ordered or directed him to do, for in the latter case he assumes only such risks of danger as he has knowledge of, or such as are obvious to him. The above authorities lay it down that he assumes the risk only where he is upon an equal footing with the master, which we understand to mean that unless he has knowledge of the danger, or unless it is as obvious to him as it would be to the master or vice-master, he would be entitled to recover; and if this is the rule, we see no error in the charge, and upon the language of our Chief Justice Gaines in the Bonnett case, as applied by Justice Neill on the second appeal, supra, we overrule these assignments of error.

It is not, however, without some hesitation that we agree to the correctness of these charges in their application to this case, but the writer is clearly of opinion that if they contain error in submitting the comparative knowledge of the danger as between the servant and vice-master, the error was harmless, because, while it may have been negligence in the vice-master to attempt to do the work without a fireman in the cab, and while the danger of such attempt may have been obvious to Wrenn, yet the evidence clearly shows that such negligent act was not the proximate cause of the injury, but that the injury was caused either by the negligence of the engineer in not using ordinary care to ascertain whether his track was clear, and thus to have avoided the collision, or of Jones in leaving the track obstructed or the car not sufficiently secured to prevent it from rolling onto the track, or of the negligence of both.

There is no contention by appellant's counsel that Wrenn knew of the obstruction on the track, or could have seen it from his position on the footboard, while the vice-master saw the car when within sixty feet of it, and knew the danger of a collision, and failed to use ordinary care to avoid it, when he testified that he could have stopped his engine within the space of twenty-five feet. Therefore the proximate cause of the injury was not the act of operating the engine without a fireman in the cab, and consequently it becomes immaterial whether Wrenn knew it was dangerous so to operate it or not.

The insistance of appellant that the car moved onto the track after the engineer's view was shut off does not help out its case, because that would only prove another ground of alleged negligence, viz., that the car was not securely propped or the brakes properly set by Jones, the appel-

lant's switch foreman, who had within an hour before placed them on that track; and as just stated, if the injury was caused by either of these negligent acts, the charge on comparative knowledge of the danger incident to operating the engine with one man in the cab, it seems to me, would cut no figure whatever, and could not have confused or misled the jury.

We find no substantial error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.