TEXARKANA & FORT SMITH RAILWAY COMPANY v. STERLING BRANDON.

Decided March 3, 1910.

**1.—Master and Servant—Duty to Warn of Danger.**

It is the duty of the master to warn his servant of dangers incident to his employment, unless they are such as he has a right to assume that the servant has knowledge of or will acquire knowledge of before he incurs them.

**2.—Same—Master's Knowledge.**

If the dangers are such as may be said to be obvious to a person of ordinary intelligence, or if they are ordinary ones incident to service the employe has contracted to perform, and so impliedly represented himself as competent to perform, in the absence of anything to show the contrary, the master may assume that the servant will understand and appreciate them, and he need not warn the servant. But where the dangers are not obvious, and where the servant has not contracted to perform the service, the master has no right to assume that the servant will know and appreciate the danger and should act on the assumption that he is ignorant and warn him thereof. Bering Mfg. Co. v. Femelet, 35 Texas Civ. App., 36; Gulf, C. & S. F. Ry. Co. v. Newman, 27 Texas Civ. App., 77; Houston & T. C. Ry Co. v. Strycharski, 35 S. W., 851, distinguished.

**3.—Same—Case Stated—Charge.**

A negro, who had previously worked only as a section hand or common laborer, having been employed two or three weeks at a railway round house in cleaning up about the round house and foreman's office, was directed by the foreman to get into the pit under an engine and loosen with a wrench a plug in the bottom of the boiler of a locomotive engine for the purpose of draining it. In so doing he was scalded by steam and hot water escaping from the boiler when the plug was loosened. He was ignorant of machinery, of the structure of the engine and the fact that the boiler then contained hot water and of the danger incident to loosening the plug. Held, that an instruction that he could recover under these circumstances if the foreman failed to warn him of the danger was proper without requiring a finding also that the foreman knew he was ignorant thereof.

**4.—Same—Pleading.**

Plaintiff having alleged that he was injured by steam and hot water

escaping from the boiler on his removing the plug in the bottom of it as directed by the foreman, no variance appeared in the proof that, having loosened and partly taken out the plug, it then blew out by the pressure of steam in the boiler.  De La Vergne Refg. Co. v. Stahl, 54 S. W., 40, distinguished.

**5.—Same.**

Plaintiff having alleged and shown facts entitling him to recover though the work he was performing by direction of his foreman was within the scope of his employment, he was entitled to have the issue of liability on that theory of the case submitted, though he had also alleged that the work was such as he had not been employed to do.

**6.—Warning—Servant in Scope of Employment.**

Though the servant is performing an act within the scope of his employment, the master setting him at the specific duty is liable for failure to warn him of dangers therein if they are known to the master and he has reason to believe that they are unknown to the servant by reason of his inexperience in the work or ignorance of the circumstances.   Facts considered and held to show that the foreman directing plaintiff to perform the work was chargeable with notice of his ignorance of danger and the necessity of warning him.

**7.—Assumed Risk—Contributory Negligence.**

Evidence considered and held insufficient to raise the issue of assumed risk or that of contributory negligence on the part of the injured servant.

**8.—Assumed Risk—Scope of Employment.**

A servant who engages in a task outside the scope of his employment and involving greater dangers of which he is ignorant, doing so at the direction of the foreman on account of the absence of the employe charged with that particular duty, does not assume the risk.

**9.—Requested Instructions.**

It is proper to refuse requested instructions on matters sufficiently covered by the charge given.

**10.—Damages.**

Evidence considered and held to support a recovery of $1,500 as damages for personal injury to a laborer in a railway round house scalded by hot water from an engine.

Appeal from the District Court of Bowie County.  Tried below before Hon. P. A. Turner.

*Glass, Estes, King & Burford,* for appellant.—Appellant can not be held liable for a failure to instruct or warn appellee unless the jury should find from the evidence that it knew, or had reason to believe, that appellee was inexperienced or was ignorant, and in consequence was in danger of receiving some injury while engaged in the work of washing the boiler.  Bering Mfg. Co. v. Femelat, 35 Texas Civ. App., 36; Gulf, C. & S. F. Ry. Co. v. Newman, 27 Texas Civ. App., 77; Houston & T. C. Ry. Co. v. Strycharski, 35 S. W., 851; 1 Labatt's Master and Servant, sec. 241; De La Vergne Ref'g Co. v. Stahl, 54 S. W., 40.

The third paragraph of the charge is erroneous in submitting a theory of the case not made by plaintiff's pleading, and in ignoring the defenses of assumed risk and contributory negligence.  Brandon v. Texarkana & Ft. S. Ry. Co., 113 S. W., 968; Gulf, C. & S. F. Ry. Co. v. Anson, 82 S. W., 785; Ratteree v. Galveston, H. & S. A. Ry.

Co., 36 Texas Civ. App., 197; Texas Short Line Ry. Co. v. Patton, 80 S. W., 881; Harwell v. Southern Fur. Co., 75 S. W., 52; Gulf, C. & S. F. Ry. Co. v. Vieno, 7 Texas Civ. App., 347; St. Louis S. W. Ry. Co. of Texas v. Fowler, 93 S. W., 484; Pecos & N. T. Ry. Co. v. Blasengame, 42 Texas Civ. App., 66; Texas Cent. Ry. Co. v. Waldie, 101 S. W., 517.

*Hart, Mahaffey & Thomas* and *Thomas N. Graham,* for appellee, cited: Brandon v. Texarkana & Ft. S. Ry. Co., 113 S. W., 968, and authorities here cited; Missouri, K. & T. Ry. Co. v. Crane, 13 Texas Civ. App., 426; Missouri, K. & T. Ry. Co. v. Quarles, 22 Texas Civ. App., 83; Hillsboro Oil Co. v. White, 54 S. W., 432; Galveston, H. & S. A. Ry. Co. v. Renz, 24 Texas Civ. App., 335; Galveston, H. & S. A. Ry. Co. v. Hughes, 22 Texas Civ. App., 134; Texas & P. Ry. Co. v. Utley, 27 Texas Civ. App., 472.

WILLSON, CHIEF JUSTICE.—On a former appeal of this case a judgment in favor of the railway company was reversed because the trial court had erred in peremptorily instructing the jury to return the verdict on which it was based (113 S. W., 968). This appeal is from a judgment against the railway company for the sum of $1,500.

Among other allegations, appellee's petition contained the following:

"3. That on about the said 5th day of August, 1906, plaintiff was in the employ of the defendant as a local cinder loader; that is, was engaged in loading cinders on cars in and about the yards of the defendant in the city of Texarkana, Texas, his said employment being that of an ordinary laborer. That one Ed Gilroy was the foreman of this plaintiff, under whose direction and control the plaintiff was then and there working.

"4. That on about the said 5th day of August, while the plaintiff was so employed by the defendant, and working under the control and direction of the said Ed Gilroy, he, the said Ed Gilroy, directed and required plaintiff to engage in other grade and class and kind of employment,· to wit, washing boilers of locomotives placed over a pit in defendant's said roundhouse, and the said Ed Gilroy, as vice-principal of the defendant, directed and required plaintiff to remove a plug from the bottom of a locomotive engine boiler then standing upon defendant's tracks over said pit in said roundhouse; that acting under the directions and requirements of the said Gilroy plaintiff, not knowing the danger incident thereto, went under said locomotive engine and removed said plug from the said boiler, whereupon a large amount of hot water and steam was suddenly and without warning discharged from the said boiler on and upon the person of the plaintiff, scalding him upon his feet; legs, side, back, groins, arms, hands, and, in fact, almost his entire body, and inflicting upon him divers and sundry burns, scalds and injuries. That the said engine and boiler was defective, in that it had no blowoff cock by means of which the hot water and steam could be released and discharged from said boiler by means of the removal of the said plug without the person removing the same going into said pit and under said boiler; that

to go under said engine and remove said plug was dangerous, but that such danger was wholly unknown to the plaintiff, and defendant's said vice-principal, Ed Gilroy, well knew that the plaintiff did not know the danger thereof, and the said Ed Gilroy did then and there, fully understanding and knowing the danger incident to the going into said pit and removing said plug, and without warning to plaintiff, as aforesaid, he furnished plaintiff with a short wrench, and directed him to go into said pit and remove said plug.

"5. That said work of removing said plug from said boiler was skilled labor, and, in order to safely do same, it required a man skilled in such work, and one with knowledge of the construction of said boiler, and one with knowledge of how to remove said plug without permitting the water and steam in said boiler to be discharged on and upon him, which was unknown to plaintiff, but was well known to the defendant. The plaintiff is not, and was not, skilled in such work, and possessed no knowledge of the construction of said boiler, and possessed no knowledge of how to safely remove said plug, and how to avoid being scalded by the hot water and steam which would escape from said boiler upon the removal of said plug, all of which was well known to the said Ed Gilroy at the time he directed and required the plaintiff to go under said boiler and remove said plug. The plaintiff had no knowledge that said engine was defective, in that it had no blowoff cock by means of which the steam and hot water could be released and discharged from said boiler without going under · said engine; that the defendant well knew that said engine was defective because it had no such blowoff cock, and failed and neglected to inform plaintiff thereof.

"6. The defendant was negligent in causing the injuries hereinbefore mentioned to be inflicted upon this plaintiff, in the following respects and in the following manner: First. In failing to have said engine equipped with a blowoff cock, so that steam and hot water might have been released and discharged from said boiler without entering said pit and going under said boiler and removing said plug with a wrench. Second. In requiring and directing plaintiff to go under said boiler and remove said plug, defendant knowing the danger incident thereto, and knowing of plaintiff's want of knowledge of such danger, and in failing to advise plaintiff of the danger, and failing to advise plaintiff of the increased danger by reason of the absence of a blowoff cock, and in failing to direct him how to safely do such work. Third. In requiring plaintiff to go under said boiler and remove said plug, knowing that it required a skilled person to safely do so, and knowing plaintiff to be unskilled, and knowing that the plaintiff did not know it required a skilled person to safely do the work, and knowing that the plaintiff was unacquainted with the construction of said boiler, and knowing plaintiff's want of knowledge of how to safely remove said plug, and knowing that the plaintiff was not aware of the danger incident to unskilled persons attempting to remove said plug."

The charge of the court, in part, was as follows:

"2d paragraph. If you believe from the evidence that defendant, by Gilroy, ordered plaintiff to help wash out one of its boilers, sta-

tioned over its pit in its roundhouse, and that Gilroy ordered him to get in said pit and loosen one of the plugs in said boiler, and that this was work outside of his employment, and which he had not contracted to do in his employment, and that in pursuance of such order he got in the pit and loosened said plug, and while so engaged, and while in the pit, the plug blew out, or was forced out, and hot water rushed and scalded him, and that this was dangerous work when done by an inexperienced person, and that defendant did not warn plaintiff of the particular danger incident to doing said work and how to do it with safety to himself, and that plaintiff was inexperienced in said work and was ignorant of the danger incident to doing it, and that the danger, if any, in doing the work was not obvious to a person of ordinary intelligence, and that such failure on the part of defendant to warn plaintiff caused him to be injured while standing in the pit, loosening said plug in said boiler, then you will find for plaintiff. However, in this connection I charge you that, if you believe from the evidence that plaintiff knew of the danger of getting in the pit and remaining there while loosening the plug in said engine, or if you believe from all the evidence in this case that the danger was obvious and apparent to any person of ordinary intelligence; or if you believe from the evidence that plaintiff was warned of the particular danger incident to getting in the pit and loosening said plug, and remaining there, and how to do this work in order to avoid injury to himself, then you will find for defendant.

"3d paragraph. If you believe from the evidence that defendant ordered plaintiff to help wash out one of its boilers, stationed over its pit in its roundhouse, and that he was ordered to get in the pit and loosen one of the plugs in said boiler, and that in pursuance of such order plaintiff got in the pit and loosened said plug in said boiler, and that while so engaged, and while in said pit, said plug blew out, or was forced out, and hot water rushed out of said boiler and scalded him, and that getting in said pit and loosening said plug was dangerous work when done by an inexperienced person, or by one ignorant of such danger, and that this work was in the scope of his employment and was work he had contracted with defendant to do, taking into consideration all the evidence in this case, and that plaintiff was inexperienced in such work and was ignorant of the danger in getting in the pit and loosening the plug and remaining therein, and that defendant knew that said work was dangerous and knew of plaintiff's inexperience and ignorance, or should have known it, from all the evidence in this case, and that defendant failed to warn plaintiff of the particular danger incident to getting into the pit and loosening said plug and remaining therein, and how to do this with safety to himself, and that by reason of such failure the plaintiff was injured, then you will find for the plaintiff. However, in this connection I charge you that, if you believe from the evidence that plaintiff knew of the danger of getting in the pit and loosening the plug and remaining therein, then you will find for defendant; or if you believe from the evidence that defendant did not know of the ignorance of plaintiff and of his inexperience, if such, or that, from all the evidence in this case,

he could not have reasonably known of his ignorance and inexperience, then you will find for defendant.

"4th paragraph. If you believe from the evidence that plaintiff got in the pit to loosen one of the plugs of said boiler, and that while so engaged, and while in the pit, and before he was injured, he was warned of his danger in time to save himself from harm, and that he heard such warning but did not heed the same, but continued to remain in said pit and continued to loosen or unscrew said plug till the hot water gushed out of said engine and scalded him, then you will find for the defendant."

From the testimony on the trial it appeared that in August, 1906, when appellee was injured, appellant had between the rails of a track at its roundhouse in Texarkana a pit about two feet deep, two and one-half feet wide and forty or fifty feet long, used in washing boilers of locomotive engines. One Gilroy, as appellant's master mechanic, was in charge of its roundhouse, and had authority to employ and discharge men performing service there. Appellee, a negro, had worked on a farm, around railroad depots, handling freight, baggage and mail, as a section hand on railroads, and at appellant's cinder pit, where he shoveled cinders on to cars set to be loaded with them. Two or three weeks before the time he suffered the injuries he complained of appellee was transferred by Gilroy from work at the cinder pit to the roundhouse. "I had taken him," Gilroy testified, "into the roundhouse as a kind of roustabout, to clean up my office and clean up about the roundhouse." Boiler washing was an occupation requiring experience and skill, and was dangerous when undertaken by an inexperienced and unskilled person. Appellee knew nothing about the construction of engines or boilers, nor anything about machinery. Gilroy knew he had had no experience as a machinist, and knew that only a short time before he was injured appellee had engaged in work as a section hand, and later in shoveling cinders. On an occasion when cold water was running through it appellee, with a wire, had scratched scales out of a boiler, but otherwise had had no experience in washing boilers. Gilroy knew this. On the occasion when he was injured, an employe who had generally assisted in washing boilers being absent, Gilroy directed appellee to wash, or assist one Hudson in washing, the boiler to a locomotive placed over the pit referred to, and preparatory to doing so to go into the pit under the boiler and remove therefrom a plug, for the purpose of providing a way for water in the boiler to escape. The boiler at the time, as Gilroy knew, contained hot water and steam. As to whether appellee also knew it contained hot water or steam was disputed, but the testimony was sufficient to support a finding that he did not know it. In compliance with Gilroy's instructions, appellee went into the pit, and, using a wrench furnished to him by Gilroy for the purpose, undertook to unscrew and remove the plug. The plug was threaded, and had been made to fill a threaded opening one and a half or two inches in diameter in the boiler. The plug was tapering in shape, and the opening in the boiler had been made to conform to it, so that, as one of the witnesses testified, referring to like plugs, "the further in they screw them the tighter they get, and the further out you screw them

the looser they get." Gilroy was present during a part of the time while appellee was endeavoring from his position in the pit under the boiler to loosen and remove the plug. Gilroy knew, as he testified, that if appellee got the plug half way out "it was liable to blow out and hurt him." "I knew of that danger," he further testified, "and I did put him down in the pit to do that work. I just gave him an S-wrench and told him to go down there and loosen one of those plugs." As to whether appellee was warned of the danger he was incurring in attempting, as he did, to remove the plug, was a disputed issue. The evidence was amply sufficient to support the finding of the jury that he was not warned and was ignorant of the danger. As to the accident resulting in the injury he suffered and the circumstances accompanying it, appellee testified as follows: "As to how I came to be under this boiler, Mr. Gilroy told us to go down under there. We first started to take out the plug to let the water out. Mr. Gilroy told us after he came down that morning to wash the boiler. The boiler was at that time in the roundhouse. As well as I can remember it was in the roundhouse. When I first went to the boiler Del Hudson was with me. Big Boy worked nights. There was another fellow named Shorty who should have been with Del Hudson. He was working with him. We called him Shorty. I don't know his name. He was off that Sunday on some kind of cause, I don't know what. He was the man that was working with Del Hudson, but was not there that morning, and Mr. Linam had me to help Del that morning. Mr. Gilroy hadn't come down there. I was helping Del when Mr. Gilroy come down there, and he had me to help him wash the boiler. Mr. Linam was the hostler at that time. We first tried to let the hot water out of the boiler, and there was no blowoff cock to let it off, or we could not work the blowoff cock on it. We then tried to take out a plug on the side, and couldn't do it, and we told Mr. Gilroy that we couldn't get any plug out on the side. I told Mr. Gilroy that. I went to Mr. Gilroy. He was at that time at the office. Mr. Gilroy then told me to go down in the pit and see if I could not get one out. Del was at that time around there somewhere, looking for a wrench. Mr. Gilroy gave me an S-wrench—a little wrench about twelve inches long. I did not know that that boiler was filled with hot water at that time. I knew there was water in it, but I did not know it was hot water. When I went back there to the engine with that wrench I tried to get a plug out. I went down in the pit like Mr. Gilroy told me. I had a hammer and beat on it, and finally I kept wrenching on it and it got loose, and I made another little turn on it and it blew out. I did not know how those plugs were made. I never had taken one out. It shot out all at once."

*After stating the case as above.*—The second paragraph of the trial court's charge submitted the case to the jury on the theory that appellee might have been injured while performing, in accordance with Gilroy's instructions, a service outside the scope of his employment. It is attacked as erroneous because, under circumstances stated in that part of the charge, it authorized the jury to find in appellee's favor,

if they believed Gilroy failed to warn him of the danger to be incurred in removing the plug as directed, without respect to whether Gilroy knew he was ignorant of that danger or not. In support of its. contention appellant refers us to Bering Mfg. Co. v. Femelat, 35 Texas Civ. App., 36, 79 S. W., 869; Gulf, C. & S. F. Ry. Co. v. Newman, 27 Texas Civ. App., 77, 64 S. W., 790; Houston & T. C. Ry. Co. v. Strycharski, 35 S. W., 851. In the Femelat case the plaintiff had been employed during forty days as a helper assisting another employe engaged in operating a circular saw placed under a table or platform. In removing with his hand sawdust collected under the table plaintiff's hand came in contact with and was injured by the saw. He testified he had been directed by the foreman to remove the sawdust. He further testified that he knew it was dangerous "to monkey with" the saw—that "the smallest child would know it was dangerous to put their hand on it." That the plaintiff may have suffered the injuries he complained of in performing, by direction of his superior, a service outside the scope of his employment, does not appear to have been an issue in the case. It seems to have been a case where the plaintiff sought a recovery on the theory that the master had negligently failed to warn him of a danger incident to work he had contracted to perform. The court properly, we think, held that a failure on the part of the foreman, under those circumstances, to warn plaintiff of the danger to be incurred in working around the saw, and to instruct him how safely to remove the sawdust, was not negligence *per se.* In the Newman case, plaintiff had been employed to fire boilers to an engine. In obedience to his foreman's instructions he undertook to operate the engine and was injured. The court said: "Hombert, who was the foreman in charge of the engine-room, and who placed plaintiff in charge of the engine, knew plaintiff was inexperienced in its operation and ignorant of the dangers. Such being the case, he should have warned plaintiff of the danger. The operating of the engine was outside plaintiff's regular employment and was more hazardous. In such case the servant does not assume the risk." In the Strycharski case the plaintiff had been changed from his occupation of cleaning stationary cars on tracks under sheds and put to work filling water tanks, etc., of cars in incoming and outgoing trains. The tanks were filled from the tops of the cars, and he used a ladder placed against a car in getting to the top thereof. While he was on the ladder filling a tank of a car, another car was caused to collide with it and he was thrown to the ground and injured. The court said: "His (plaintiff's) own evidence, and that of his superior, Bloxsom, who had the power to employ and discharge such servants, and was the representative of the company, show that his previous experience was not sufficient to qualify him, without further instructions, for the new work, and that in his new situation there were risks which were not incident to his old, against which ordinary care for his safety required warning from the superior." The court further said: "In view of the verdict of the jury (for the plaintiff), we conclude that by the change in the method of handling the cars on the night in question plaintiff was exposed to a danger of which he was ignorant, and which his experience did not enable him to foresee,

and that Bloxsom knew, or by ordinary care could have known it, and that such care would have required him to notify plaintiff of such danger, and that, in omitting to do so, he was guilty of negligence which helped to cause plaintiff's injury." It is apparent, we think, that the cases mentioned do not support appellant's contention, but that, on the contrary, the Newman and Strycharski cases, so far as they can be said to be applicable, rather tend to support an opposite view of the question. As we understand the law, it is the duty of the master to warn his servant of dangers incident to his employment, unless they are such as he has a right to assume that the servant has knowledge of or will acquire knowledge of before he incurs them. If the dangers are such as may be said to be obvious to a person of ordinary intelligence, or if they are ordinary ones incident to service the appellee has contracted to perform, and so impliedly represented himself as competent to perform, in the absence of anything tending to show the contrary, the master may assume that the servant will understand and appreciate them, and he need not warn the servant. But where the dangers are not obvious, and where the servant has not contracted to perform the service, we understand the law to be that the master has no right to assume that the servant will know and appreciate the dangers, and that it becomes his duty to act upon an assumption that the servant is ignorant of the dangers, and, therefore, to warn him thereof. 1 Labatt's Master and Servant, secs. 460, 240, 270; 4 Thompson on Neg., secs. 4065, 4102, 4079; Mather v. Billston, 156 U. S., 397, 39 Law ed., 469; International & G. N. Ry. Co. v. Gaitanes, 70 S. W., 101; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72, 33 S. W., 335; Texas & P. Ry. Co. v. Utley, 27 Texas Civ. App., 472, 66 S. W., 311; Tennessee C. I. & R. Co. v. Jarrett, 82 S. W., 227; Consolidated Coal Co. v. Wombacher, 24 N. E., 629; Alabama Steel & Wire Co. v. Wrenn, 34 So., 974; Ft. Worth & D. C. Ry. Co. v. Wrenn, 20 Texas Civ. App., 628, 50 S. W., 210. "Investigation of cases of this class—that is, where the servant is injured in the performance of service outside the scope of his employment"—said Mr. Labatt, "must always start from the hypothesis that these risks are prima facie unknown to the servant, and the fact of his knowledge must be established by positive proof." 1 Labatt on, Master and Servant, `sec. 460. If such risks should be regarded as prima facie unknown to the servant, then the master has no right to assume he knows of them. If the master can not assume that the servant knows of them, the risks being such as the servant has not assumed, the duty of warning him of same rests upon the master; and, if he fails to perform the duty, he should be held liable to the servant for an injury proximately caused by his neglect. So, in the case before us, if washing boilers was not a duty appellee had contracted to perform, if the risk he incurred in attempting to remove the plug as directed by Gilroy, preparatory to washing the boiler, was not an obvious one, as we think it was not, if Gilroy had not warned him of the danger to be incurred, and if he was, in fact, excusably ignorant thereof, as the testimony showed he was, and if as a result, proximately, of Gilroy's failure to warn him, he suffered injuries as complained of, we think appellant was liable, without reference to

whether Gilroy knew or did not know that appellee was, in fact, ignorant of the danger he incurred in undertaking the service. Therefore we are of the opinion that the charge upon the ground urged was not erroneous.

Nor do we think said portion of the court's charge was erroneous because it authorized the jury to find for appellee if they believed that the plug blew out or was forced out, the allegation in the petition being that appellee removed it. The plug blew out or was forced out while appellee was engaged in the act of removing it, and we think the allegation that he removed it, in view of the evidence, authorized the instruction to find for appellee if it blew out or was forced out. In De La Vergne Refrig. Mach. Co. v. Stahl, 54 S. W., 40, cited by appellant as supporting the contention it makes in this particular, the plaintiff had alleged that he was injured by a piece of iron chipping off from a hammer furnished to him by the master and striking him in the eye. He further alleged that the hammer was defective in that it was old, cracked, etc. The evidence tended to show that the hammer was a new one, was not cracked, etc., and that the piece chipped off from it because it had been too highly chilled or tempered. On the ground that plaintiff could recover only on proof of the negligence particularly alleged, the court held to be error a refusal of the trial court to give a requested charge instructing the jury to find for the defendant if they believed the injury was not caused by the hammer being old and cracked, but by a hammer too highly tempered or made of inferior material. In the case before us the negligence alleged was not the blowing or forcing out, or removal of the plug, but the failure of Gilroy to warn appellee of the danger he incurred in endeavoring to remove it.

The third paragraph of the court's charge submitted the case to the jury on the theory that removing the plug was a duty within the scope of appellee's employment, and therefore one he had undertaken by his contract of employment to perform. It is attacked as erroneous on several grounds. We do not think the contention made, that such a theory of the case was without support in the pleadings, should be sustained. Appellee alleged fully the facts of his case, specifically averring that Gilroy knew it was dangerous for a person ignorant of the construction of a boiler and unskilled in removing such plugs therefrom to undertake as appellee did to comply with his (Gilroy's) instructions, and further specifically averring that said Gilroy, at the time he directed him to do the work, knew he was ignorant of the construction of a boiler, knew he did not know how safely to remove the plug therefrom, knew he did not appreciate the danger he would incur in attempting to remove said plug, and nevertheless failed to warn him of that danger. That appellee also alleged that the work was outside the scope of his employment, we think, furnishes no reason for saying that his pleading was insufficient to support a finding that appellant was negligent in failing to warn him of dangers incident to work within the scope of his employment of the existence of which it knew he was ignorant.

Nor, in the case as made by the record, do we think the contention made, that said portion of the charge was erroneous, because, under

circumstances therein stated, it authorized a recovery by appellee, notwithstanding the duty to remove the plug was one within the scope of the duties of his employment, if appellant did not know, yet should have known, that appellee was ignorant of the danger he incurred in complying with Gilroy's instructions. If Gilroy did not know, yet should have known, that appellee was ignorant of the danger when, without warning him of that danger, he directed appellee to do the work, we think appellant was liable. If washing boilers was a service appellee contracted to perform appellant had a right to assume that appellee was competent to wash them, and, in the absence of circumstances tending to show he did not apprehend the dangers to be incurred, did not owe him the duty to warn him as to ordinary risks incident to such service. But if the circumstances were such that Gilroy should have known that appellee, on account of his ignorance or lack of experience, in obeying his command would incur a danger he did not appreciate, it was Gilroy's duty to warn him of the danger. The law was thus stated by Judge Lurton in Felton v. Girardy, 104 Fed., 130: "If the employment be one of a dangerous character, requiring skill and caution for its proper discharge with safety to the servant, and the master be aware of the dangers, and have reason to know that the servant is unaware of them, and that from his youthfulness, feebleness, incapacity or inexperience, does not appreciate them, the servant can not, even with his own consent, be exposed to such dangers, unless he be cautioned and instructed sufficiently to enable him to comprehend them, and, with proper care on his own part, do the work safely." In Louisville & N. Ry. Co. v. Miller, 104 Fed., 126, the same judge, in stating the rule, said: "It is illogical to say that a servant impliedly assumes the hazards and risks of an occupation which are known to the master, but which the master knows are unknown to the servant, unless the dangers are so obvious that even an inexperienced man could not fail to escape them by the exercise of ordinary care. The law is well settled that the duty of cautioning and qualifying an inexperienced servant in a dangerous occupation applies as well to one whose disqualification arises from a want of that degree of experience requisite to the cautious and skillful discharge of the duties incident to a dangerous occupation with safety to the operator, as when the disqualification is due to youthfulness, feebleness or general incapacity. If the master has notice of the dangers likely to be encountered, and notice that the servant is inexperienced, or for any other reason disqualified, he comes under an obligation to use reasonable care in cautioning and instructing such servant in respect to the dangers he will encounter and how best to discharge his duty." And see Michael v. Roanoke Machine Works, 19 S. E., 263. Gilroy knew that the boiler was full of hot water and steam, and that the service he directed appellee to perform was a dangerous one. Appellee did not know the service to be dangerous. We are inclined to think the testimony should be regarded as establishing not only that Gilroy should have known, but conclusively that he did know, that appellee, because of his inexperience, was ignorant of and did not appreciate the danger involved in undertaking to remove the plug. Gilroy knew that appellee had been working as a section hand, and

then shoveling cinders, before he transferred him to work at the roundhouse; that appellee had no experience as a machinist; that he was a "new man so far as roundhouse work went;" and that he had never assisted in washing more than one boiler, and that when he assisted in washing that one it had cold water running through it. Gilroy, if he did not know, was chargeable with knowledge of the peculiar shape of the plug he directed appellee to remove; he knew that its shape could not be determined from an inspection of its exposed part; and he knew that, because of its shape when unscrewed about one-half its length it would blow out or come out of the opening it was made to fill, and would permit hot water and steam from the boiler to escape into the pit. He had no reason to believe appellee knew or had ever had an opportunity to know anything about the shape of the plug, and therefore that he knew or would appreciate in the least the danger to be incurred because of its shape, in removing it as he had been directed to remove it. If, therefore, we were of the opinion that the charge of the court on the ground urged was erroneous, we would be inclined to hold, on the ground that the evidence indisputably showed that Gilroy knew appellee was ignorant of the danger, that the error was a harmless one.

The third paragraph of the charge is further attacked on the ground that, while it authorized the jury to find in appellant's favor if they believed appellee appreciated the danger he incurred in attempting to remove the plug, or if they believed that it did not know and reasonably could not have known of appellee's ignorance and inexperience, it did not authorize them to consider its defenses of assumed risk and contributory negligence on the part of appellee. If it was not clear from the evidence that appellee was wholly ignorant of any danger to be incurred in washing the boiler, it was clear that he did not apprehend the danger he incurred on account of the peculiar shape of the plug, and that he was excusable for not apprehending it. Therefore, we think an issue as to whether he had assumed that risk or not was not made by the evidence. Nor do we think the testimony raised an issue as to contributory negligence on his part. At the time he was injured he was engaged in doing what Gilroy had instructed him to do, in the manner Gilroy had directed him to do it. Bering Mfg. Co. v. Femelat, 35 Texas Civ. App., 36, 79 S. W., 873; Helm v. O'Rourke, 15 So., 402. The danger he thereby incurred not being an obvious one, he had a right to assume that Gilroy's knowledge was superior to his own, and it should not lie in appellant's mouth to say that, because he complied with its foreman's instructions, he was guilty of negligence.

There is, however, another reason why we think the assignments attacking said third paragraph of the court's charge on the grounds stated should be overruled. The service appellee attempted, in compliance with Gilroy's instructions, to perform, was outside the scope of his employment. He had been transferred by Gilroy from the cinder pit to the roundhouse to clean up his (Gilroy's) office and about the roundhouse—to serve as a "kind of roustabout." In other words, to do work involving no risk, and requiring, to do it safely, neither experience nor skill. Evidently neither Gilroy nor appellee contemplated

that the latter should wash boilers. That kind of work involved danger to the person undertaking it, and required experience and skill. Appellee possessed neither, and Gilroy knew it. Moreover, appellant had other men employed to do that work. That appellee was called upon to assist in the work was due to the fact that another employe charged with the performance of such service was absent on the occasion when appellee was injured, and not to the fact that it was a service within the scope of the duties he had been employed to discharge. The service clearly being one outside the scope of appellee's duties, the court need not have submitted the case to the jury on the theory that they might believe the service to have been one he had contracted to perform. To submit it on such a theory, we are inclined to think, was error, but not an error of which appellant has a right to complain. The error in the instruction was that it submitted to the jury a view of the case not authorized by evidence, and on such a view authorized them, if they believed appellant did not know and reasonably could not have known that appellee was ignorant of the danger Gilroy sent him into, to find in its favor; whereas, the danger being one appellant was bound to assume appellee was ignorant of, and appellee being, in fact, ignorant of it, appellant was liable if it did not warn him of the danger, without reference to whether it knew or could have known he was ignorant of it or not.

The assignments complaining of the action of the court in refusing to give to the jury, as requested, special charges numbered 1, 2, 3 and 4, are overruled. The matter presented by those charges, so far as applicable to the case, we think was sufficiently presented in the main charge.

By its thirteenth assignment appellant attacks the verdict of the jury as excessive. We do not think it is. On the contrary, we think the evidence amply sufficient to support the sum found in appellee's favor. He was earning $45 per month, was rendered unable to work during about four months, and incurred expense for medicines and physician's services amounting to $20. As to his injuries, he described them as follows, and he was not in any particular contradicted: "As to what happened to me when that blew out: Why, hot water and mud blew all over me on this side—both legs—scalded me from the collar bone clean down to the ankle on this side, and scalded this leg. Hot water and mud flew in my face; couldn't see out of this eye. It seemed like the hot mud blew all in my face and caught this side as I come out. It scalded me so that I was down about three months before ever I could do anything. I don't know what I did when I first got out of the pit. I was crazy. I don't know where I went. They got a hack or something and carried me home. From there I was carried to the depot and put on the train and went to the hospital at Kansas City. I didn't stay there long—about three or four days. They don't allow any colored people there, and shipped me back down to Shreveport. I stayed there. I suffered pain. I liked to died with my arm. When I got back to Shreveport my arm and leg was swelled up so they couldn't get the cloth off hardly; when they took the cloth off the flesh and all come off. It hadn't been dressed until I got to Shreveport. When they took it off the

meat and all come off; I was lying on one of those chairs, and when they turned the water on it peeled off; I could see the bone, mighty nigh—at this place I guess I could. I suffered from that two months before I could get any peace at all. I was in bed about thirty days. I was in bed all the time after I got to Shreveport. They wouldn't allow me to get out of bed—kept me in—on account of they wanted it to heal if it would. I couldn't do any work to amount to anything for four months. I tried to work a little in three months' time. I still suffer with this arm. I can't use this arm at times at all, and I can't tote anything on this shoulder. It deadened this whole arm, all the way up. If I put my shoulder against anything, this arm looks like pins were sticking in it or something."

The assignments not in effect disposed of by what has been said are believed to be without merit, and are overruled.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.