HOUSTON LIGHTING & POWER CO., 1905, v. CONLEY. (No. 367.)

(Court of Civil Appeals of Texas. El Paso. Nov. 19, 1914. Rehearing Denied Dec. 17, 1914.)

1. MASTER AND SERVANT (§ 185*)—DUTY OF MASTER—DELEGATION OF DUTY.

A master's duty to provide the servant with a safe place to work is nondelegable, and a servant who selects a location for a spool of wire which is to be unwound represented the master in the performance of a nondelegable duty, and the master is liable for negligence in the performance of such duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

2. MASTER AND SERVANT (§ 279*) — NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for injuries to a servant, held sufficient to support a finding that another servant was guilty of negligence in performing a nondelegable duty of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

3. MASTER AND SERVANT (§ 208*)—PLACE TO WORK—ASSUMPTION OF RISK.

The risk of failure to provide a safe place to work is one not ordinarily assumed as incident to servant's employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*]

4. MASTER AND SERVANT (§ 203*)—"ORDINARY RISK"—"EXTRAORDINARY RISK."

Ordinary risks arising in a service are assumed by the servant; negligence of either master or servant is not an element of such risks, but they arise out of the conditions of the employment, and are such that the servant could not reasonably anticipate that injury would occur from them in the usual course of the service, and are incapable of being foreseen or avoided by the exercise of ordinary care by either master or servant. Extraordinary risks are those that are abnormal and arise out of the master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543; Dec. Dig. § 203.*

For other definitions, see Words and Phrases, Second Series, Extraordinary Risk, also, First and Second Series, Ordinary Risk.]

5. MASTER AND SERVANT (§ 208*)—ASSUMPTION OF RISK—PLACE TO WORK.

The selection of a safe place for the location of a spool of wire while it was being unreeled was not a risk assumed by the servant who assisted in the unreeling.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*]

6. MASTER AND SERVANT (§§ 101, 102*)—SELECTION OF PLACE TO WORK—DEGREE OF CARE.

It is the master's duty to exercise ordinary care to furnish a servant a reasonably safe place to work, and his failure to do so is negligence which renders him liable for an injury proximately caused thereby.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

7. MASTER AND SERVANT (§ 286*)—SELECTION OF PLACE TO WORK—QUESTIONS FOR JURY.

Whether a master was negligent in selecting a place for a servant to work held a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by T. J. Conley against the Houston Lighting & Power Company, 1905. Judgment for plaintiff and defendant appeals. Affirmed.

Andrews, Streetman, Burns & Logue, Blake Dupree, and W. L. Cook, all of Houston, for appellant. Geo. H. Currier and Kinard, Menefee & York, all of Houston, for appellee.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

WALTHALL, J. This is a suit by Conley to recover damages arising from personal injuries sustained while in appellant's employ.

Upon the occasion of the accident, defendant company was stringing wire upon its poles in the city of Houston, the wires being drawn over the crossarms along a series of poles, from and off of a reel. This reel or spool was situate upon the ground and fixed at point designated by one Browan, defendant's foreman, in charge of the work and gang of men. Conley was employed and working as a "groundman," and was placed in charge of the reel to hold it in place, and see that the wire reeled off properly as it was pulled from the other end. The reel was placed near a dead tree which was seen by Browan at the time the reel was placed there. The wire proceeded from the reel upon and over the first pole, and in so doing passed through the branches of this tree. At the time of the accident plaintiff was at his post of duty, and, in the discharge thereof, was using a two by four timber as a brake in retarding the revolutions of the reel. As a pull was made in the wire at its further end, and as it drew taut, it broke a limb which fell and struck him, inflicting injuries of which he complains in this suit.

The only grounds of recovery submitted in the court's charge were as follows:

"You are instructed as a matter of law that it was the duty of the defendant company to use reasonable care and diligence to furnish the plaintiff a reasonably safe place in which to work, and that this duty upon its part was nonassignable.

"If, therefore, you believe from the evidence that the spool of wire was placed, under the direction of plaintiff's foreman Browan, at a point where the wire or spool to the first pole upon which it was being strung necessarily passed in close proximity to a dead tree; and if you further believe from the evidence that the vibration of said wire during a pull of the same by defendant's employés caused same to forcibly come in contact with the limbs, or some of the limbs, of said dead tree, and that one of said limbs by reason thereof broke off, striking plaintiff in the back; and if you further believe from the evidence that in so placing the spool of wire, at which plaintiff was required to work, plaintiff's superiors in defendant's service, charged with that duty, failed to exercise that degree of care and prudence to see that plaintiff had a reasonably safe place in which to work, ordinarily exercised by reasonably prudent and careful persons under the same or similar circumstances, and that, as a proximate result of such failure, plaintiff was injured in one or more of the particulars alleged; and further believe from the evidence that defendant's employés charged with the duty of directing the location of the spool of wire in question, in the exercise of ordinary care and prudence, should have reasonably foreseen that plaintiff might have been injured in some like manner, by reason of pulling the wire in close proximity to said dead tree—then in such event, you will let your verdict be for the plaintiff, and assess his damages as hereinafter instructed, unless you find for defendant under other portions of this charge, or special charges, given you by the court."

[1, 2] No complaint is made of the manner in which this issue is submitted, but the point is made that the jury's finding thereon in plaintiff's favor is unsupported by the evidence. The duty of the master to provide a safe place to work is nondelegable, and it is immaterial whether Browan be regarded as a vice principal. In the selection of the spot where the reel was to be placed, and plaintiff was to work, he represented the master in the performance of a nondelegable duty, and the master is liable for any negligence upon his part in the performance thereof. It could not be regarded as a mere detail of the work, and the evidence amply supports the finding that Browan was guilty of negligence in placing the reel in such proximity to the tree.

[3] The risk incident to the master's failure to provide a safe place to work is not a risk ordinarily incident to the servant's employment, and as such assumed; hence, the second assignment must be overruled.

What has been said necessarily adversely disposes of all assignments except the third, under which it is contended the evidence discloses plaintiff's danger to have been obvious and patent, and the risk assumed.

The reel was placed upon an axle and about 35 feet distant from the nearest pole. The wire extended upward therefrom through the branches of the tree, which intervened, and over the crossarm on the pole. The tree was a dead one, with long extending branches. Plaintiff, at the time the limb fell and struck him, was between the pole and reel with his back to the pole and tree. He was stooping over, using the two by four as a brake to retard the movement of the reel of wire. He had been in the employ of defendant as a groundman for about four years, and was thoroughly experienced in such work, and the work he was doing was incident to his employment, and he was thoroughly familiar therewith. He had been engaged in the same service all the day before at about the same place, and all of the morning of the day upon which he was injured until 11 o'clock, at which time the accident happened.

Appellant's statement under this assignment refers to and adopts the testimony set out under previous assignments as embodying practically all of the evidence from any source throwing any light on the subject. We therefore copy from the assignments such evidence as we deem necessary to a full comprehension of the issue involved. Appellee Conley said:

"I had nothing whatever to do with the choosing of the position of the reel. The foreman directed the work that particular morning, and directed that the reel should be placed in that particular place. I was working under the direction of that foreman. After the reel was placed, I was left there to see that the wire did not run off the reel when the team stopped work, that is, to take up the slack in the wire, keep up the slack in the wire. * * * While the wire was pulling off, the wire was jumping, bounding up and down, and struck a limb on this tree and knocked it down on me; when

the limb fell on me I was between the reel and the pole with my back toward the pole and tree. That was a necessary position for the work I was doing with the tools I had to use. I was using a small piece of two by four some six or seven feet long. * * * I used that for a brake. * * * It was not my duty to do anything except to take care of the spool and reel. * * * Neither the foreman nor any one in charge who had charge of the placing of the reel informed me of any danger. I did not know of any danger then existing. I did not know whether the limbs on that dead tree would break off and fall on me. * * * I saw the tree. The tree was something like 30 feet from where the spool was placed when I was at work. The wire that went over the poles came in contact with the limbs of the tree; the wire went over some limbs and underneath others. The foreman directed the placing of those wires over these poles that went through the limbs of that tree. The foreman gave the linemen their orders. * * * I did not know the tree was rotten. I knew it was dead. I did not have anything to do with making an inspection of it. The foreman said nothing to me about the tree. The foreman said: 'Place the reel there, boys, at this particular place'—and pointed that place out. * * * The day I got hurt was not the only day I had worked at it right there where the spool and reel were then. * * * I had worked about that same spot before with the spool and reel. * * * I noticed from time to time when those pulls were being made there was small stuff fell. Some of those pieces that fell were about as big as my finger and 10 or 12 inches long, something like that. * * * There was not anything about there from my point of view, and with the opportunity I had for general observation in and about the work, to indicate to me that there was any danger of that wire slipping a limb on my shoulder."

D. E. Bostick testified:

"I am general foreman of the defendant. * * * B. D. Browan had charge of the gang that was doing that work. * * * Where wires go through the limbs of a tree it is our custom to saw off limbs that may endanger the wires or the men, that is, where wires go through between limbs. It is the duty of any lineman that the foreman should appoint to saw off those limbs, to go up there and saw off the limb. When the accident happened, I was out on one of the other jobs. I had been on this job where the accident happened that day, possibly an hour earlier than the accident. * * * I saw where the plaintiff was at work. I knew the work was going on there. I saw the wire running up from the reel and over the first pole. I did not see any unusual condition of danger there. No condition of danger existed there, any more than that of a man getting tangled up in the wire. I did not see any occasion to saw off any limbs."

Ben Browan testified:

"When we went to work there in the morning I told them where to set the reel. * * * I did not have the tree inspected by any one."

The court, by proper instructions, submitted to the jury the issues of assumed risk and negligence on the part of defendant to furnish plaintiff a safe place to work. The jury found against appellant on both issues. The appellant, in this assignment, says that the verdict of the jury and the judgment of the court were contrary to the uncontradicted evidence, in that, under the evidence, the dangers from which plaintiff's injuries proximately resulted were patent, obvious, and the result of the operation of natural laws, of which plaintiff had notice, and was required to take notice.

It would not be necessary to do more than to read the evidence of appellant's foreman to see that the danger from falling limbs was not patent and obvious. The foreman was at the place of the accident about an hour before the accident happened, and he testified that he saw where the appellee was at work, knew the work was going on there, saw the wire running up from the reel over the first pole, and did not see any unusual condition of danger, said that no unusual condition of danger existed there any more than that of a man getting tangled up in a wire. Did not even see any occasion to saw off the limbs, and his underforeman, Browan, did not deem it necessary to even have an inspection made to determine the necessity of sawing off the limbs.

[4] The law makes a distinction between ordinary risks arising in the service, and extraordinary risks. The former the employé assumes. Ordinary risks do not involve negligence of either master or servant, and arise out of such conditions of employment that the servant could reasonably anticipate that injury would occur in the usual course of the service, incapable of being foreseen and avoided by the exercise of ordinary care of either master or servant. It is elementary that all risks not arising from some default of the master are necessarily assumed by the servant. The very basis of ordinary risks is the fact that the servant contemplates the danger arising from the service, has an implied knowledge of it, and have no relation to the master's neglect of any duty he owes the servant. Such risks the servant assumes. If the plaintiff had gotten tangled up in the wire on the reel, or in the wire as it left the reel, it might be said that such danger was an ordinary risk and assumed. Extraordinary risks are such as are abnormal, or such as arise from the negligence of the master.

[5-7] We are of the opinion that circumstances of this case show that the risk was not one assumed by the servant, and that the liability of the company, if any, arose from a failure to perform some duty to plaintiff. It is the duty of the master to exercise ordinary care to furnish the servant a reasonably safe place to work. A failure to do so would be negligence, and if the negligence proximately causes an injury the master would be liable. That was the negligent act alleged by plaintiff, and the one submitted to the jury. It was purely a question of fact for the jury to determine, and we think the finding was amply supported by the evidence.

We find no error and the case is affirmed.