## HOUSTON CAR WHEEL & MACHINE CO. v. MURRAY. (No. 455.)

(Court of Civil Appeals of Texas. El Paso. Feb. 10, 1921.)

**1. Master and servant ⬌278(9)—Evidence held to show negligence.**

In an action by a servant for injuries received when struck by a crane after falling on a rail from a defective ladder, evidence held sufficient to sustain a finding of negligence on the part of the master.

**2. Master and servant ⬌280—Finding that injuries did not result from assumed hazards sustained.**

In an action by a servant for injuries received when he fell from a defective ladder upon a rail and was struck by a crane, evidence held to sustain finding that the injuries did not proximately result from risks, hazards, and dangers assumed by plaintiff.

**3. Master and servant ⬌281(12)—Finding of no contributory negligence sustained by evidence in action by servant.**

In an action by servant for injuries received when he fell from a defective ladder upon a rail where he was struck by a crane, evidence held to sustain a finding that the injuries were not proximately caused by the plaintiff's own negligence.

**4. Master and servant ⬌279(5)—Evidence held to sustain finding that foreman was vice principal.**

In an action by a servant for personal injuries received when he fell from a defective ladder upon a rail and was struck by a crane, evidence held to sustain a finding of the jury that defendant's foreman was a vice principal.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by W. W. Murray against the Houston Car Wheel & Machine Company. Judgment for plaintiff, and defendant appeals. Affirmed in conformity to opinion of Supreme Court (222 S. W. 219).

Baker, Botts, Parker & Garwood, Andrews, Streetman, Logue & Mobley, C. R. Wharton, and W. L. Cook, all of Houston, for appellant.

Presley K. Ewing, of Houston, and L. E. Blankenbecker, of San Antonio, for appellee.

HIGGINS, J. This was an action for damages caused by personal injury brought by Murray against his employer, the ap-

pellant. Verdict was returned and judgment rendered in his favor for $10,000, and defendant appealed.

The judgment was first affirmed by this court. Upon rehearing it was reversed and remanded. 181 S. W. 241.

The Supreme Court granted a writ of error. The case was referred to Section B of the Commission of Appeals. That court rendered its opinion, thus announcing its final conclusion:

"We are of the opinion that under the facts of this case the evidence raised the issue of the duty of the master to exercise reasonable care to keep the place where Murray was working safe; also the duty to warn him of the contemplated movement of the crane, that he might have an opportunity of taking steps to avoid the consequences of the danger arising therefrom; that these duties are nondelegable; that they were incumbent upon the master. Houston Light & Power Co. v. Conley (Civ. App.) 171 S. W. 561.

"On rehearing the Court of Civil Appeals did not pass upon the sufficiency of the evidence, or hold that the judgment of the trial court is against the weight of the evidence, but erroneously applied the law to the facts.

"We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the cause remanded to that court for further proceeding in accordance with this opinion."

(Com. App.) 222 S. W. 219.

The Supreme Court thereupon made this notation and order:

"We agree with the conclusion of the Commission of Appeals that there was evidence warranting the finding of the jury that the plaintiff's injury was due to the breach by the defendant of a nondelegable duty, and rest the decision upon that ground.

"This holding makes immaterial the question as to whether the foreman was a vice principal, and we express no opinion upon that question.

"The judgment of the Court of Civil Appeals is reversed, and the case remanded to that court."

222 S. W. 220.

The case is now before us again for further proceeding in accordance with the order of the Supreme Court. Upon the resubmission in this court both parties have filed written arguments. The pleadings, evidence, and findings of the jury are stated in the original opinion of this court, to which reference is made.

We supplement the evidence there stated with the following excerpts from the testimony:

Murray testified:

"When I began to work in the building, the first work I did was on the west end, the north side. * * * My work consisted of putting up these wires and putting the lights on it for lighting purposes. The portion of the building where I was injured was on the south side near

the east end. If I remember correctly, it was on the morning of the day I was hurt when I passed over from the north to the south side. Mr. Brown had told me where he wanted the lights at the south side of the building. It was several days previous that he told me that, one or two days. I was injured between 3:30 and 4 o'clock in the afternoon, and it was in the early part of that morning that I got down to the south side of the building to begin work, probably along about 8 o'clock; it was just after we began work; I do not know just the hour. I did see Mr. Brown there that morning, and spoke to him, bid him 'good morning.' * * * I was not an experienced man in wiring; I was not an electrician; the first work I ever did was in that shop. * * * There was no other method by which to get up to these lights except by the use of a ladder; you could not get up without a ladder; that was the only manner in which the work could be done. * * * I don't know how long I had been up on the ladder at the time I started to fall, a few minutes, I guess, three or four minutes. * * * When I was up on the ladder there was nothing to have kept people down at the bottom from seeing me; they could have seen me if they had looked, I suppose. * * * There was nothing to have kept them from seeing me. * * * What started me falling was a sudden shaking there that caused me to overbalance and fall backwards, and I would have fallen if I hadn't made a grab and landed on the rail. I did not see the crane until it was on top of my hand. * * * Before that time, I did not notice or feel any shaking while I was working upon that ladder."

Again:

"I did not know, at the time I had my ladder against this post and was doing this work, that the movement of that crane along there loaded with metal would shake the building. At the time I put my ladder upon the post to do the work I did not know that the washers and bolts attaching the two posts together were loose; neither did I know, when I went upon the ladder, that the bottom of the post was soft and worm-eaten, as I have said it was, and that pieces of the post could be dug out with my finger. Neither did I know, when I went upon the ladder, that I would be exposed to any danger of that kind. I did not think, when I put my ladder up there to go upon the building, that it was unsafe; I had every reason to believe that it was stable and safe, or ought to be; I didn't know. No one ever warned me that it was not safe and stable; no one informed me about it. * . * * I did not know, and had no reason to believe, that they were about to move that crane or were going to move it at the time I was injured; I didn't know anything about it."

Further:

"I did not have any authority to tell the men working down there to look out for me. * * * The person whom I expected to instruct the men in the foundry to not run the crane upon me or to give me warning if they were going to run the crane was Mr. Brown; I expected him to do that because he was foreman of the foundry. * * * I expected Mr. Brown, if he went away, to leave some provision to some one to look out for my safety, to inform me, to warn me. It would not have been possible for me to do my work that I had been directed by the foreman in the iron foundry to do and also to keep a line on what everybody else was doing in the foundry; I couldn't do both. Neither could I stand upon the ladder and fix those cleats and do the wiring and also take note of what the moulders were doing, and when they got everything ready to move the crane; it would have been impossible for me to have done so in doing my work.

"I did not hear that crane as it approached me, nor did I see it start; neither did I know it was close to me when I threw my hand on the rail. If I had not thrown my hand on the rail, I would have fallen."

"If I had known that crane was going to be moved down that track, I would not have been in the position I was occupying. I would have come down from there because it was dangerous; there would be danger or possible danger of falling into a pot of red-hot metal if I would fall. I had never been an employé in the iron foundry department, and I did not know and understand the usual course and manner in which the work was done over there in that department."

William Moeser, who was working with Murray at the time, testified:

"That the time Murray was injured was the second time the crane had been moved along there that day, and that, when the crane was moved the first time, the plaintiff, Murray, was down on the ground."

The foreman, Brown, testified that there was nothing in the way between him and Murray at the time to prevent him seeing Murray, and further:

"I could see him up there. * * * When they let her go, and I saw that crane start down on her journey, loaded as she was, I don't believe it did occur to me to tell Murray to look out; I didn't do it. Of course, there was no intention on my part to fail to do it, but I failed to do it. Anyhow, as I say, if it had occurred to me and I had been looking up there and had seen him there, I would have told him to look out. I was not paying any attention to him and do not recollect seeing him there."

The five assignments of error read:

"First. The trial court erred, to the prejudice of the defendant, in overruling and in not granting defendant's motion for a new trial, upon the ground specified in paragraph 30 of the amended motion, which reads as follows: 'As a matter of law, the evidence is wholly insufficient to support a judgment in favor of the plaintiff, there being no competent testimony from which the jury could legitimately have found negligence on the part of the defendant in any respect alleged in plaintiff's petition.'

"Second. As a matter of law, and under the undisputed testimony, plaintiff's injuries proximately resulted from risks, dangers, and hazards assumed by him.

"Third. As a matter of law, and under the undisputed testimony, plaintiff's injuries were proximately caused by his own negligence in one or more of the respects alleged in defendant's answer.

"Fourth. The trial court erred, to the prejudice of the defendant, in overruling and in not granting defendant's motion for a new trial, in response to the grounds set out in paragraph 14 of said motion, reading as follows: · 'The affirmative answer of the jury to special issue No. 15 is unsupported by any evidence in the record, and contrary to the undisputed testimony. Said special issue No. 15 reads as follows: "If foreman Brown gave such order without warning to plaintiff, was his act in so doing negligence towards plaintiff; that is, a failure to exercise towards him such care as an ordinary, prudent person would have exercised under the same or similar circumstances? Answer 'Yes,' or 'No.' ' '

"Fifth. The trial court erred, to the prejudice of the defendant, in overruling and in not granting the motion for new trial upon the ground presented in paragraph 11 of the amended motion, which paragraph reads as follows: 'The affirmative answer of the jury to special issue No. 12 is unsupported by any evidence in the record, and contrary to the undisputed testimony. Said special issue No. 12 reads as follows: "Was the foreman, Brown, a vice principal of the defendant? Answer 'Yes,' or 'No.' A vice principal of an employer is one to whom the employer has intrusted authority to supervise, control, and direct the employés under him in their work, and at his discretion to employ and discharge them." ' "

[1-4] We hold that the evidence is sufficient to support the findings of fact made by the jury, and that the judgment of the trial court is not against the weight of the evidence. See opinions of the Commission of Appeals and Supreme Court, 222 S. W. 219.

For this reason the assignments are overruled, and the judgment affirmed.

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes