MAGGIE BURNS V. MERCHANTS AND PLANTERS OIL COMPANY ET AL.

Decided May 9, 1901.

**1.—Corporation—Liability for Death.**

By virtue of the statute a private corporation other than a common carrier may be held liable for injury resulting in death. Rev. Stats., art, 3017, clause 2.

**2.—Same—Fellow-Servants.**

Deceased, in the employ of an oil company, was assigned to a given piece of work, and placed, as to its discharge, temporarily under the control of C., a fellow servant, who was instructed by the company's superintendent to station a watchout while the work was being done, but who neglected so to do. Held, that the duty of the company to protect deceased was a nonassignable one, and with reference to such protection C. represented the company, which was liable for the injury resulting from his negligence.

**3.—Same—Contributory Negligence.**

Where deceased was working as one of a gang in a place he must have known was unsafe, and heard the superintendent instruct the foreman of the gang to have a watchout for passing engines, and knew that this had not been done, it was proper to submit the issue of contributory negligence to the jury.

**4.—Negligence—Railroads—Movement of Engine—Signals.**

See evidence held not to charge a railway company with liability on the ground of negligence of its servant operating its switch engine in failing to give signals and to observe a broken cable while placing cars, etc., at an oil mill.

**5.—Damages for Death—Verdict Too Small.**

Where the deceased husband was constantly employed, earned $1.50 to $1.75 per day, contributing $300 per year to the support of the wife, was 28 years old and in perfect health, a verdict and judgment allowing the widow $500 as damages for negligently causing his death, should be set aside as insufficient, and a new trial awarded.

Appeal from Harris. Tried below before Hon. W. H. Wilson.

*J. B. Brockman, O. T. Holt,* and *L. B. Moody,* for appellant.

*Hutcheson, Campbell & Hutcheson* and *Baker, Botts, Baker & Lovett,* for appellee Oil Company.

*A. L. Jackson,* for appellee Texas & New Orleans Railway Company.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellant, Maggie Burns, to recover damages for the death of her husband, Ben Burns, resulting from injuries received by him while in the employment of the appellee, Merchants and Planters Oil Company, through the negligence of said company and of the Texas & New Orleans Railroad Company, both of whom are sued. The father and mother of the deceased, Amos and Fannie Burns, were made parties defendant. Amos died pending the suit, and the action was dismissed as to him. Deceased was killed by the running of a switch engine, by the employes of the railroad company, into the premises and yard of the oil company against a cable suspended over the track and which the deceased and other servants of the oil company were repairing, and throwing down

a platform upon which they were at work; and the petition alleged negligence on the part of the oil company in failing to station a watchman and warn the deceased of the approach of the engine, and on the part of the railroad company in failing to give notice of its intention to run the engine into the yard, and negligently running against the cable.

There was a trial by jury which resulted in a judgment in favor of the plaintiff against the Merchants and Planters Oil Company for the sum of $500, and against the plaintiff in favor of the railroad company. The defendant Fannie Burns recovered nothing. This appeal is by the plaintiff, who assigns as error the inadequacy of the amount recovered by her against the oil company, and errors of the court against her as to the railroad company upon the submission of the case to the jury in giving and refusing instructions. By cross-assignment of error the oil company denies any liability for the death of the plaintiff's husband, because it was the result of the negligence of a fellow-servant of the deceased, and because the oil company is a corporation not responsible for the negligence of its servants or agents.

Ben Burns and the plaintiff were married April 27, 1898. He was employed by the oil company as a "roustabout," and was killed on October 22, 1898. At the time of the accident the deceased was engaged with a gang of men under the direction of a foreman in repairing a cable which extended from one seedhouse to another, situated on opposite sides of some railroad switch tracks running into the premises of the oil company. The premises were inclosed by a fence, and where the tracks entered the inclosure there was a gate. The engines of the railroad company frequently came into the inclosure with cars to be loaded and unloaded, and ran over the tracks alongside of the seedhouses. It was customary for blasts of the whistle to be given when the engines were about to enter the premises, but this was done for the purpose of having some one to open the gates, which were usually kept closed, and to notify the weighmaster of the oil company so as to ascertain from him the work to be done for the mill. All of the employes of the oil company knew that there was a great deal of switching done there. At the opposite end of each of the seedhouses from the gate, and out of view of the persons operating an engine entering the gate, there was a platform about seventeen feet above the ground, and near them were pulleys attached to machinery in the seedhouses upon which a wire cable ran from one seedhouse to the other over the railroad tracks high enough for the engine to pass under it easily. The cable was an endless chain about 217 feet long and weighed approximately 400 pounds.

On the morning of the accident in which Burns was killed, a strand of the wire cable referred to had become loose, or frayed, and Sweeney, the superintendent of the oil company, instructed one Coultrup to repair the cable, assigning to him six men to assist him in making such repairs. Coultrup was a carpenter and millwright. In order to repair the cable, it became necessary to get up on the platform, at the end of each of the

seedhouses, and take the cable from off the pulleys, in order to slacken it. Coultrup and those working with him had taken the cable off the flange of one of these pulleys, letting it rest on the axle or shaft, and were upon the platform at the end of the other seedhouse removing the cable from the other pulley, when an engine belonging to and operated by the railroad company entered the oil company's yards to do some switching, and ran down one of the tracks lying between the oil company's seedhouses, when its smokestack came in contact with the slackened, suspended cable thus lowered, with such force as to pull down the platform at the end of the seedhouse upon which Coultrup, Ben Burns, and others were working, throwing Ben Burns to the ground, killing him.

None of the switch crew had noticed or paid any particular attention to the position of the cable prior to the injury, and did not know that there was anything unusual in its position. The cable had never been left in such position before, and no trouble had ever been had in running engines under it. None of the crew had knowledge of any fact that would indicate that the deceased or other employes of the oil company were about to repair the cable, or to change its position. The crew had been in the yard before on the same day with the engine and had gone out. The whistle was not blown on their return, because they found the gate open and had no occasion to get information from the weighmaster. While they were out, the employes of the oil company went upon the platform and lowered the cable in order to repair it. There does not appear to have been any negligence on the part of the servants of the railroad company in the operation of the engine and running it against the cable.

It was shown by the evidence that the gang engaged in repairing the cable was detailed for that special purpose, and was in charge of the foreman, Coultrup, but he had nothing to do with hiring or discharging the men working under his directions. The superintendent of the oil company gave instructions to the head carpenter to have the cable fixed, and he got Coultrup and told him to get some other men and fix it. He showed Coultrup what to do, and told him to look out for the engine. The superintendent afterwards went to Coultrup and told him what he wanted done, and to wait until the engine got out of the yard, and to place a man on the tracks to watch out. If a watchman had been stationed at the gate or on the tracks, as directed by the superintendent, he could have seen the engine when it entered the yard and could have stopped it, or warned the men at work on the platform, and prevented the accident. But Coultrup neglected to put out a watchman, as he was directed to do by the superintendent, and as the result of his negligence the switch engine ran against the cable and threw down the platform and the deceased was killed.

The charge of negligence against the railroad company was the failure of its servants in charge of the engine to give notice or warning of the

approach of the engine, and negligently and carelessly running against the cable after they had seen it, or by the use of ordinary care could have seen it. There was no statutory duty on the part of the railroad company to blow the whistle, and its failure to do so was submitted to the jury as a circumstance bearing upon the issue. The charges complained of under the second, third, and fourth assignments of error correctly defined the duty of the servants in charge of the engine, and there was no error in refusing the special charge number 4, as complained of under the fifteenth assignment of error. It can not be said that it might have been reasonably foreseen that the failure to sound the whistle was the proximate cause of the injury. At any rate, the question was correctly submitted to the jury, and the verdict is supported by the facts of the case. But the complaint made of the charge is that it should have submitted the question of liability if the injury was such as might have been reasonably foreseen by a person of ordinary prudence. The charge, however, is in accordance with the case of Railway v. Bigham, 90 Texas, 223, and is correct. If it be defective for the reason stated, it should have been corrected by a special charge. The requested special instruction does not cure the alleged defect. A consequence, however, which can not have been reasonably foreseen, is one which can not have been foreseen by a man of ordinary prudence. We are of the opinion that the facts showed no liability on the part of the railroad company. There was no evidence tending to show that the persons in charge of the engine saw that the cable was out of position. Railway v. Breadow, 90 Texas, 27.

We think that the evidence was sufficient to authorize the submission of contributory negligence to the jury, and that the fourth, sixth, and twelfth assignments of error should not be sustained. In addition to the fact that the deceased was at work in a place which he must have known was unsafe with the cable lowered as it was, and the engine liable to come into the yard at any time, there was evidence tending to show that he heard the superintendent instruct Coultrup to put a watchman on the tracks, and knew that he had not done so. We are of the opinion that there is no error in the record with respect to the judgment in favor of the railroad company, and it will be affirmed. As it is not complained of, the judgment against Fannie Burns, the mother of the deceased, will not be disturbed.

The oil company owed the deceased the duty of protecting him from danger while he was at work repairing the cable, and the deceased had the right to rely on it to discharge its duty in that respect. It was a nonassignable duty, and the oil company could not relieve itself of it by charging Coultrup with its performance, and the negligence of Coultrup in the performance of the duty was the negligence of the company, and not of its servants or agents. Railway v. Kernan, 78 Texas, 294; Railway v. McElyea, 71 Texas, 386. Although Coultrup and the deceased may have been fellow-servants with respect to their general employment,

yet with respect to the duty of the oil company to provide for the safety of the deceased while he was at work, he represented the company. The Massachusetts cases cited in the brief of the oil company represent the extreme view some courts have taken, that the master is not liable for the negligence of a fellow-servant when he has intrusted to him the performance of the duty to furnish safe appliances or a safe place to work. These cases are referred to and discussed by the author in Bailey's Master's Liability for Injuries to Servants, pages 128, et seq. The latest case cited from Massachusetts is O'Keefe v. Brownell, 156 Massachusetts, 209; but Johnson v. Boston Tow Boat Co., 135 Massachusetts, 209, is the leading case in support of the doctrine. A distinction is made by some of the authorities as to works under construction, and such a case is Armour v. Hahn, 111 United States, 318. As stated in Flike v. Railway, 53 New York, 549, the true rule is "to hold the corporation liable for negligence or want of ordinary care in respect to such acts and duties as it is required to perform and discharge as master and principal, without regard to the rank or title of the agent intrusted with their performance. As to such acts the agent occupies the place of the corporation, and the latter is charged with the performance of a duty which properly belongs to the master." This doctrine was more fully expressed in the later case of Fuller v. Jewett, 80 New York, 46, as stated by Bailey, who quotes at some length from it. The author says: "In the Federal courts, the courts of New York, Wisconsin, Maine, and many others, the doctrine is that the master is presumably present all the time, even in the performance of the actual labor; while in Massachusetts and some other States this extreme is not held in the case of corporations, but rather that when the master has used due care in the first instance, and provided suitable and reasonably safe appliances, and provided suitable means for keeping and maintaining them in proper repair, and employed competent servants to see that the means were properly used, it has fulfilled its duty." Bailey's Mast. Liab., 129. The Supreme Court of this State has held that a private corporation other than a common carrier may be held liable for injuries resulting in death, under clause 2, article 3017, of the Revised Statutes. Fleming v. Texas Loan Agency, 87 Texas, 238. The case under consideration is clearly distinguishable from Hargrave v. Vaughan, 82 Texas, 350, and other cases cited in the brief of the oil company, for in those cases persons other than common carriers were sought to be held liable for the negligence of their servants or agents, and not for their own negligence. We are of the opinion that the doctrine of the New York cases is the true rule, and the one that should be adopted in this State, and that it should not make any difference in the application of the rule that the oil company through its superintendent gave specific directions as to what should be done to protect the deceased while at work. The master could not relieve itself of the duty and devolve it upon a fellow-servant of the deceased.

Appellant's assignment of error upon the insufficiency of the amount

of the judgment must be sustained. Rev. Stats., art. 1452; Michalke v. Railway, 27 S. W. Rep., 165; Shropshire v. Doxey, 25 Texas, 127. It was shown by the undisputed evidence that the deceased husband was constantly employed, earned $1.50 to $1.75 a day, and contributed to the plaintiff's support at the rate of not less than $300 a year; that at the time of his death he was 28 years old, in perfect health, and that plaintiff was 29 years old. Deceased was the husband of the plaintiff, and notwithstanding the fact that prior to her marriage to him she may not have been all that she ought to have been, yet there is nothing to show that she was not a dutiful wife, and did not have the right to expect and receive of him the support that she did receive, or that their marriage relation was loose, and that such support was liable to cease on that account. The judgment of the court below in favor of the plaintiff against the Merchants and Planters Oil Company will be reversed because it is insufficient in amount, and the cause will be remanded for another trial.

*Reversed and remanded.*