HOUSTON CAR WHEEL & MACHINE CO.
v. MURRAY. (No. 455.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 4, 1915. On Rehearing, Dec. 9, 1915.
Rehearing Denied Jan. 6, 1916.)

1. MASTER AND SERVANT ⬥157—INJURIES TO SERVANT—DUTY TO WARN.

Where a master owes a servant a nondelegable duty to warn him of a danger, the warning must be reasonably adequate under the circumstances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 303; Dec. Dig. ⬥157.]

2. MASTER AND SERVANT ⬥226—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A servant does not assume, as a risk ordinarily incident to his employment, any risk arising from the master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. ⬥226.]

On Rehearing.

3. MASTER AND SERVANT ⬥191—INJURIES TO SERVANT—"VICE PRINCIPAL."

Where the foreman of the machine shop, and not of the foundry, was plaintiff's superior, and could hire and discharge him, the foundry foreman was not defendant's vice principal, though plaintiff was by his superior directed to do wiring in the foundry and to find out where the foundry foreman wanted it; hence negligence of the foundry foreman was that of a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 475–479; Dec. Dig. ⬥191.

For other definitions, see Words and Phrases, First and Second Series, Vice Principal.]

4. MASTER AND SERVANT ⬥103—INJURIES TO SERVANT — DELEGATION OF DUTY — SAFE PLACE OF WORK.

It is the nondelegable duty of the master to exercise ordinary care to provide the servant with a reasonably safe working place.

[Ed. Note—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. ⬥103.]

5. MASTER AND SERVANT ⬥150—INJURIES TO SERVANT—SAFE PLACE OF WORK.

A foundry building was reasonably safe for foundry purposes, although, owing to its age, it shook and trembled when a traveling crane carrying molten metal was moved. Plaintiff, who was an employé in the machine shop, was directed to do electric wiring in the foundry. This he did, selecting his own mode of work and standing on a ladder leaned against the wall. When the crane carrying the molten metal was started, the ladder was so shaken that plaintiff came near falling, and to save himself caught the rail on which the crane traveled with his left hand, receiving injuries. *Held*, that the master did not owe him any nondelegable duty to warn him of the approach of the crane; the building being safe for its ordinary purposes.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 297, 299–302, 305–307; Dec. Dig. ⬥150.]

Walthall, J., dissenting.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by W. W. Murray against the Houston Car Wheel & Machine Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, Andrews, Streetman, Burns & Logue, C. R. Wharton, and W. L. Cook, all of Houston, for appellant. Jno. Lovejoy, Presley K. Ewing, and L. E. Blankenbecker, all of Houston, for appellee.

HIGGINS, J. Murray brought this suit to recover damages from his employer, the Houston Car Wheel & Machine Company, on account of personal injuries sustained. The cause was tried before a jury and submitted upon special issues. Based upon the jury's findings, judgment was rendered in appellee's favor for sum of $10,000.

It was alleged by the plaintiff that he was in defendant's employment, as a machinist in its machine shops, said defendant being engaged in the manufacture of car wheels, manufacture and repair of machinery, and having and maintaining also an iron foundry, where metals were melted, forged, and prepared; that the foundry and machine shops were located in different buildings, were not connected with one another, and the employés in the respective departments worked separately and without connection with or relation to each other, under the control and management of different foremen and vice principals of defendant; that a day or two prior to the time hereinafter mentioned the foreman and vice principal of plaintiff in the machine shops, to wit, one Barnes, acting within the line and scope of his authority and employment, directed plaintiff to go into the iron foundry of defendant for the purpose of there doing some work in the wiring of the building covering the machine shops for the use of electricity; that said work, with the knowledge of Barnes as vice principal of the defendant in the machine shops, and with the knowledge also of the vice principal of the defendant in the iron foundry, was out of plaintiff's line of work, the plaintiff, with the knowledge of the defendant, its vice principals and agents, not being experienced in the work of wiring buildings, and being a green man thereat; that the building covering the iron foundry was a large building more than 100 feet in length, and more than 50 feet in breadth, and reaching a height of 20 or 25 feet from the ground to the eaves or top of the sides of the building; that it was necessary that the said building be wired on the south and north lengthwise sides, and the said vice principals and agents of defendant so directed the plaintiff in the line and scope of their authority, the work which the plaintiff was thus directed to do consisting of stringing the wires on the sides of the building and fastening and tightening the same thereon with cleats, the work being done, as was

necessary, with the knowledge of the said vice principals and agents of defendant, with a ladder about 25 or 30 feet in length, upon which the plaintiff climbed and stood at the different distances from the ground or floor at which he was from time to time engaged in doing said work; that it was thus necessary in doing said work that the plaintiff, standing upon said ladder, handle the wires and pull and put the same in place and hold the same and the cleats in position, and attach the cleats securely to the wall with a hammer or other driving instrument.

That said vice principals and agents and each of them had the immediate personal supervision, control, and direction of the men and work intrusted to them, respectively, by the defendant, with the power to employ and discharge the employés under them, including plaintiff, of whom they were severally and together superiors.

That, as aforesaid, the sides of said walls were about 25 feet in height, and the plaintiff was working on the inside of said building engaged in said work; that the said building was a large frame wooden structure about the dimensions aforesaid, and was supported by wooden posts in the ground standing perpendicularly, upon which the roof thereof rested and to which the wooden sides were attached; that there were also wooden posts in the ground in front of said other wooden posts and attached to the same and reaching practically the same height, and upon these latter posts were laid the trackage and framework of an immense traveling crane; that said crane was composed of immense beams crosswise said building, running from the top of one side of the building to the top of the other side, and said crane was composed of a framework resting upon and attached to double flanged wheels which ran upon tracks, which tracks rested upon the said posts last mentioned on each side of the building; that beneath the said tracks and supporting the same and resting upon said second or front posts were pieces of timber running lengthwise from each front post to the other, and the said top timbers thus resting upon said posts were further attached to the said posts by means of what are known as "45's," which are pieces of timbers commonly known as braces about 3 feet or more in length running upward from near the top of the said front posts of an angle of about 45 degrees to the bottom of the said lengthwise timbers, and the same were attached or toe-nailed to said posts and timbers with nails or spikes.

That the said traveling crane was thus moved from one end of the top of said building to the top of the other end on said tracks, and the said crane was used for the purpose of conveying from one end of the building to the other end and intermediately large pots or ladles of molten metal, said ladles or pots being attached to said cranes by hooks and chains, and the said crane was moved by employés of the defendant on the ground by means of pulleys or ropes.

That at the time plaintiff received his injuries hereinafter mentioned he was working at said work of wiring on the south wall or side of said shed or building, and the employés of defendant in the said foundry department were also engaged in their services for defendant on the ground near the south side of said shed or building; that their said work consisted of, among other things, molding metals and in moving the said crane occasionally for the purpose of carrying from place to place heavy pots of molten metal on said crane along the south side of the said foundry.

That at or about the time of the casualty hereinafter mentioned the plaintiff, for the purpose of and in the course of his work of wiring on the south side of the shed, placed the said ladder at the south side of the building and somewhat toward the east end thereof, and, placing the bottom of same on the ground, leaned the top thereof onto and against one of the said "45's," or braces, and thereupon went upon said ladder up to near the top of the said side, in such position that his head was about 6 inches below the rail upon which the double flanged wheels of one side of said crane ran when being moved, and, standing upon said ladder, was there engaged with the said wires, cleats, and hammer in his hand in his work of wiring said building, and in attaching and pulling and tightening the said wires, and in fastening the same with the cleats to the side of the building.

That, while so engaged, the employés of defendant, and its agents and servants, acting for the defendant in the line and course of their employment, having attached to said traveling crane a large and heavy pot of molten metal weighing about 3,000 pounds, the same being very near the south side of the building, so that practically the whole weight of same rested upon that side of the crane and that side of the shed, proceeded to move the same on the crane from the west towards the east; that the plaintiff had been working on that side of the building for some time theretofore, and the said crane had not been loaded with metals and moved theretofore while he was upon the ladder and working upon said side of the shed, nor did he know, nor in the exercise of ordinary care did it come to his knowledge, that the same would be moved or was contemplated being moved while he was upon said ladder.

That the moving of said crane greatly shook the said building and the said posts and "45" which plaintiff's ladder was leaning against, causing the said ladder to slip or slide or greatly shake, so that the plaintiff, while engaged to his duties, was shaken from his equilibrium on said ladder, and was in the act of falling; that the said double

flanged wheels of the crane were close to him on said south track when he began to fall, and, pursuing the only course possible to save himself from falling from said ladder about 20 feet to the ground below, and in all probability into said pot of molten, red-hot metal, he grabbed his left hand upon said track to hold himself, whereupon the said double flanged wheel of said crane immediately ran upon his hand, and mashed, bruised, and maimed the same and rendering it permanently useless.

That the said injuries to plaintiff were proximately caused by the negligence of the defendant, its vice principals and agents, in this:

"(1) The defendant negligently failed in its nondelegable duty to exercise reasonable care to furnish the plaintiff a safe place to work, in that the said building or shed was old and infirm, and its fastenings and supporters and the posts thereof for said crane had become weak and unstable and unsteady by constant use and by age and by the constant moving to and fro on said building, and especially the south side thereof, of heavy pots and ladles of metal weighing thousands of pounds, so that the building or shed and the posts aforesaid, and especially the south side thereof and the posts, when heavy pots of metal were being moved upon said crane, shook and trembled and moved to such an extent that it would, under such conditions of moving said crane, shake a ladder from its position leaning against said building, and the posts and '45's' thereof, or cause it to slip, or unusually jar and shake the same so that one in the performance of the duties plaintiff was performing, though in the exercise of reasonable care for his safety, as was the plaintiff, would be caused to lose his equilibrium upon said ladder and fall as were the conditions at the time in question when said ladder was moved, and plaintiff thereby caused to lose his equilibrium and begin falling.

"That, having assigned the plaintiff the duty of 'wiring said building, and the means pursued by plaintiff being the only means, with the knowledge of defendant, its vice principals and agents, by which to do so, and the defendant and its vice principals and agents knowing and being charged with the knowledge that plaintiff must and would of necessity pursue the course in doing said work which he did thus pursue aforesaid, it, its vice principals and agents, impliedly represented to him that the said building was in stable enough condition that the said ladder would not be caused to slip or so unusually jar by the movement of said crane as that he, in the exercise of ordinary care for himself in doing said work, would be shaken therefrom, and it was the duty of defendant to have and maintain said building in such stable condition, the violation of which duty and the aforesaid allowing said building and the posts thereof and the said crane and its tracks and supports to be and remain in the condition aforesaid was negligence towards the plaintiff.

"That the plaintiff had never been an employé in that department or worked under said shed and knew nothing of its condition, but assumed, as he had a right to assume, that the same was secure and stable and safe for the work which he was thus directed to do. * * *

"(4) The defendant, its vice principals and agents, knowing or being in the exercise of ordinary care charged with the knowledge of all the conditions hereinbefore alleged, were negligent in not instructing the plaintiff of the dangers aforesaid, and particularly in not instructing or informing or warning him to keep off the ladder or keep a watch out from the movement of said crane, and, further, in not instructing the plaintiff that the said crane would be moved, of which condition to the knowledge of defendant he was ignorant, while he was upon said ladder and of the dangers thereof aforesaid, of which said conditions the plaintiff was ignorant."

The defendant answered, traversing practically all the material allegations of the petition, pleas of assumed risk and contributory negligence, and a further plea that plaintiff's injuries were occasioned by the negligence of his fellow servants.

The jury by their special verdict specifically found: (1) That plaintiff, while at work at or near the top of the ladder in question, was injured on or about December 19, 1912, by a wheel of the alleged crane running on or over his left hand; (2) that plaintiff thus placed his hand on the track of the crane to avoid falling on account of losing his equilibrium; (3) that this was due to his ladder slipping or being shaken; (4) that this was caused by the trembling or shaking of the part of the building against which the ladder was resting; (5) that plaintiff was at the time of his alleged injury in the employment of the defendant; (6) that he was then engaged in the ordinary discharge of the duties of his service under such employment; (7) that the part of the building on or in connection with which the ladder was resting was worn and infirm, and thereby instable or unsteady, to the extent that, when the alleged crane was being moved with molten metal, as on the occasion in question, it would cause a ladder securely placed to be shaken from its position; (8) that this condition of the building rendered the place not reasonably safe for plaintiff's work if the crane was loaded and moved, as it was on the occasion of his injury in question; (9) that the defendant by its agents in that behalf knew of this, or would by the exercise of ordinary care have known thereof, within a reasonable time to have remedied the same before plaintiff's alleged injury; (10) that such unsafeness of the place where plaintiff was working at the time was due to negligence on the part of the defendant, that is, to a failure on its part to exercise ordinary care to maintain such place in a reasonably safe condition; (11) that such negligence on the part of the defendant was a proximate cause of plaintiff's alleged injury; (12) that the foreman, Brown, was a vice principal of the defendant, that is, he was one to whom the employer had intrusted authority to supervise, control, and direct the employés under him in their work, and at his discretion to employ and discharge them; (13) that the foreman, Brown, in the course of his service as vice principal for defendant, ordered or directed employés of the defendant working under him to move the crane at the time of plaintiff's alleged injury; (14) that he, foreman Brown, then gave such order for movement of the crane without any warning to plaintiff of its intended movement; (15) that foreman Brown's act in giving such order was neg-

ligence towards plaintiff, that is, a failure to exercise towards him such care as an ordinarily prudent person would have exercised under the same or similar circumstances; (16) that such negligence on the part of foreman Brown was a proximate cause of plaintiff's alleged injury; (17a) that a person of ordinary care in foreman Brown's situation under like circumstances could reasonably have anticipated or foreseen from such act on his part injury to plaintiff as a natural and probable consequence; (17b) that a person of ordinary care, if knowing of the weak and infirm condition of the building as found, could reasonably have anticipated injury therefrom to plaintiff or to one engaged as he was on the occasion in question as a natural and probable consequence if the crane was moved with molten metal as found, etc.

The jury further found that plaintiff's injury was not due to any contributory negligence on his part, and was not caused by negligence of a fellow servant uncombined with negligence of defendant, and was not assumed either as a known danger or as one ordinarily incident to his employment.

Brown, who is referred to in the findings, was defendant's foreman in the foundry where plaintiff was working when injured. The Houston Car Wheel & Machine Company was conducting a machine shop and an iron foundry in different buildings. The employés of the machine shop were subject to the orders of one Barnes. Those of the iron foundry were subject to the orders of one Brown. Murray was employed as a machinist in the machine shop. A few days before the accident and injury Barnes directed Murray to go into the foundry building and do some electric wiring, that Brown, foreman in the latter building, would show him where the wires and lights were to be placed, etc. He went to Brown and was so instructed. The manner in which he was doing the work was the usual, customary, and proper way in which to do it. This was not his regular line of work, but he had done some of this work before, and the facts showed that he was familiar with the ways and means of doing it. He worked two days in the north side of the building, Tuesday and Wednesday, and Thursday, the day of the accident, he had been working at or near the place of the accident on the south side. The plaintiff testified:

"A traveling crane is a common device and application known to machinists. All traveling cranes are similar, and are used for similar purposes. They usually travel on overhead rails, one rail on one side of the building or room, the other rail on the other side of the building or room, and they have a truck on each side with steel beams running across and supported upon those trucks, and from the beam which is supported by the trucks which run along those walls from the beam you have suspended a crane device that is used to lift a car of material backward and forward, as well as other appliances, and things necessary. It is possible with the use of such crane, and that has been my experience, to shift the crane not only backward and forward along the building, but to shift the appliance backward and forward along the beam; they use it both ways. It has been my experience in the traveling crane that I have been familiar with that they can be shifted backward and forward from one end of the building to the other along the rails; and it has also been my experience that such traveling cranes, while stationary in so far as the trucks are concerned, still they can be a part of it and can be moved along the beam on some appliance attached to that so as to go from side to side of the building. It is true that in my experience where I have worked that in my observation of traveling cranes they are used rather constantly in the department where I have worked. That is true only from what I know of where I have worked. They were used often where I was working. I knew that the crane was there in the iron foundry. I had seen it in use before the accident to me, and on such occasions it would be carrying metal or castings. We had a crane in the machine shop where I worked, and I have used it quite often. During the time I was working in the foundry I had seen the crane in question go by. Nothing had been suggested to me about it. They did not tell me that it would be stopped during my work, nor did I understand that it was to be stopped. As a machinist I knew it might be used."

The evidence conclusively establishes that the building, its posts, props, supports, etc., and the crane and its overhead track, were sufficient for the general foundry purposes for which they were designed. There is evidence to support the finding of the jury that the posts, braces, 45's, etc., at the point where plaintiff was at work were old and worn and infirm, and thereby unstable and unsteady.

The plaintiff described the accident as follows:

"I will state to the jury the circumstances leading up to my injury and the manner in which I was injured. I went to work there, and in the course of my work I had to use a ladder to get up off the ground. I had gone up the ladder quite a ways and was winding the wire up; and this was the last bit of work that I had to do until the main feed line ran in, and in doing that work I had to stand on the ladder, and I placed the wires in that shoulder, or cleat they call it, and was drawing them tightly with this right hand, and had my left just coming down there to press it onto it to hold those wires down tightly until I could get my hammer to top those nails and they would hold them tight, and just at that moment there was a sudden shaking—I didn't know just what it was at that time—and I felt my ladder slip, and I was falling backwards, my right hand was holding on those wires, and my left hand was in the air, and I made a grab to save myself, and my hand landed on the rail. I didn't know what I had until the crane crushed on top of me. I stated I was falling backwards and would have fallen if I had not caught something. I was high enough up on the ladder at that time so that my head was just a little below the rail. I suppose the height is about 20 feet. When I speak of the rail, I have reference to the rail that the crane traveled on. I did not know there was anything attached to this crane at the time I began to fall, but I did see there was something attached to it afterwards. I saw it when I came down; I saw a ladle there about that size (indicating) in diameter, full of boiling metal. It was little to the right of me."

It is assigned as error and urged in the supporting propositions that the court erred in refusing a new trial because the evidence

was insufficient to support a judgment in plaintiff's favor; there being no competent testimony from which the jury could legitimately have found negligence upon defendant's part in any respect alleged.

It is unnecessary to discuss all of the phases of alleged negligence; for it is obvious that the assignment must be overruled if there is sufficient evidence to support any ground of negligence alleged in the petition and resolved in plaintiff's favor by the jury's findings.

One of the grounds of negligence alleged was in failing to warn plaintiff of the movement of the crane. Upon this issue the jury found that the foreman, Brown, ordered the movement of the crane and gave no warning to Murray of its intended movement, and that his action in so doing was negligence towards Murray and a proximate cause of his injury. We think the plaintiff is entitled to recover upon the issue of negligence indicated, basing our opinion upon the broad ground that it is the nondelegable duty of the master to exercise ordinary care for the servant's safety in the course of his employment. When Barnes, the foreman of the machine shop, and defendant's admitted vice principal as to plaintiff, took plaintiff from the machine shop, where he was regularly employed, and put him at work in the foundry building, wiring the building, it was defendant's personal and nondelegable duty to give plaintiff warning necessary for his reasonable safety of any extraordinary danger likely to put him in peril. There are cases, of course, where a general notice will suffice; but where, as here, the plaintiff was engrossed in his work, and would not know when the dangerous crane, with its load of molten metal, would be set in motion, he was wholly without adequate protection, except by such warning of the intended movement of the crane as would enable him to descend from the ladder and place himself out of the zone of peril. The plaintiff testified:

"At the time I grabbed this trackage to avoid falling to the ground I did not know that the crane was near me · I did not know that it was coming down the track, I did not hear it. I did not, while I was upon the ladder, know that the crane was liable to be moved or would be moved down the track. I did not know of the movements of the crane, nor did I have instructions or was I told by anybody that I was to look out for the crane. I was never told anything of that kind, I was never warned about it. I did not expect that the crane would be moved down by me while I was up there at work unless they would warn me. I had not been upon the ladder at any time when they moved the crane by me."

There was here neither notice to plaintiff that the crane might be moved at any time without warning to him, so that he must look out for himself (even if that were possible), nor any warning of the imminent movement of the crane, so as to enable him to get down from the ladder, which was his obvious only means of adequate protection. It is plainly manifest from the evidence that the defend-

ant knew or was charged with knowledge that in wiring the building plaintiff was or might probably be on a ladder where he, in fact, was when the crane was moved, and that his position would be imperiled if it was moved while he was there.

[1] What a warning must be will vary, but in any case it must be such as is reasonably adequate for protection; hence here it must have been such as would have enabled plaintiff to get down from the ladder, and, as he had no notice that the crane might be moved without warning, and that he would be expected to look out for himself, even if that would have sufficed, it follows that he was entitled to seasonable warning of the imminent moving of the crane so that he could protect himself from the superadded danger resulting therefrom.

Mr. Labatt (Master & Servant [2d Ed.] vol. 3, § 1112), in discussing the master's duty to warn a servant in regard to transitory and sporadic dangers, thus states the law:

"One very common aspect of the duty to provide a safe system is presented in those cases in which the gravamen of the complaint is a breach of the obligation to warn a servant against perils arising from the manner in which the instrumentalities are affected by isolated events which occur at more or less frequent intervals during the performance of the servant's work, but which provide no permanent effect upon the intrinsic condition of the instrumentalities themselves. The distinctive feature which is common to actions to recover for injuries caused by such perils is that the environment of the servant undergoes some temporary change. A warning appropriate to such circumstances may be given in the shape of a general instruction. It must, then, be such as to put the servant upon his guard, either by notifying him of the time and place where he may expect the change to occur, or, at all events, by notifying him that, within certain limits, the change may occur at any time and any place; or the warning may take the form of some signal informing the servant that the change is imminent. In either case the danger to be provided for will often be such that the servant's safety can be effectively secured only by directions in the nature of rules promulgated beforehand for the guidance of all the servants, both those who are to be protected against sporadic dangers and those whose acts may produce such dangers. The logical relation thus indicated is deemed to be sufficient warrant for considering this obligation as one which arises out of the duty to conduct the business on a safe system. In a merely logical point of view, however, it might, with perfect propriety, be discussed in connection with the general obligation of keeping the servant informed as to dangers which he has no means of ascertaining himself.

"One phase of the obligation is indicated by the principle that the master is bound to see that no order with respect to change of position of the subject of the work shall be executed without due warning to the employé. This principle is exemplified in a class of cases involving injuries of a type very common in the great industrial establishments of modern times—injuries, that is to say, produced by the fact that some heavy object not under the control of some particular servant passes at intervals along certain lines through the space in which a servant is required to work. The special danger to be anticipated from such an event arises from the fact that the servant's coemployés, whose duty it is to regulate the movement of the heavy object, be they ever so vigilant, will often find it

impossible to save him from injury by a warning given immediately before the entrance of the object into the space, where there is danger of its impinging either upon his own person, or upon some object which will thereby be set in motion to his injury, and that the servant himself will often be unable, consistently with giving adequate attention to his duties, to keep a proper watch for the approach of the object. The situation, therefore, is one in which the highest degree of care on the part of the servants themselves cannot always avert a catastrophe, and in which the adoption of suitable precautions by the master is calculated to diminish very greatly the risk of such a catastrophe. Under such circumstances it is reasonable to infer the existence of an absolute duty on the master's part to make arrangements for imparting a timely warning to any servant who may be imperiled by such a cause. The numerous illustrations of the duty to give warning are furnished by those cases in which the danger was produced by the movements of railway rolling stock, or other similar appliances."

This doctrine of its being an affirmative and nondelegable duty of the master to use ordinary care to give its employés warning, adequate for their protection, of the movement of its trains or other endangering bodies, has found recognition and direct application in several Texas cases, among them being noted Burns v. Oil Co., 26 Tex. Civ. App. 223, 63 S. W. 1061; Railway v. McElyea, 71 Tex. 386, 9 S. W. 313, 1 L. R. A. 411, 10 Am. St. Rep. 749; Railway v. Stewart, 92 Tex. 540, 50 S. W. 333; Railway v. Tisdale, 39 Tex. Civ. App. 372, 87 S. W. 1063; Railway Co. v. Higgins, 22 Tex. Civ. App. 430, 55 S. W. 744; Railway v. Jones, 75 S. W. 53. The doctrine was also applied in Stone & Webster, etc., v. Goodman, 167 S. W. 10. But the most striking illustration of its applicability to the facts here presented is Michael v. Roanoke Machine Works, 90 Va. 492, 19 S. E. 261, 44 Am. St. Rep. 927. This case is almost an exact parallel to the one at bar, and sustains the doctrine that the servant has the right to rely on the fact, when placed in a situation of danger, where engrossing duties are required of him, that the master will not, without the proper warning, subject him to other perils which, by reason of a changed environment, arise unknown to him and from which his work necessarily distracts his attention.

Under the first assignment it is further objected that the evidence is insufficient to support a finding of negligence in any respect alleged because it appears that neither defendant nor any of its agents for whose negligence it could be held liable could reasonably have anticipated that Murray's hand would be placed upon the rail at such time and under such circumstances as would probably cause injury. Murray was standing upon a ladder with his face to the wall and his back towards the operations in the foundry, both hands engaged and his mind absorbed in his work. The foundry operations were noisy, and danger of injury to him might reasonably have been anticipated arising out of the movement of the heavily laden ladle of metal along its track in close proximity to

him, consideration being had for his situation and surroundings and the work he was doing.

[2] What has been said with respect to due warning disposes of the claim of assumed risk. If the risk to plaintiff from which his injury resulted was due to defendant's negligence in not providing due warning, as the evidence shows and the jury have found, then the risk was not one ordinarily incident to the employment. The servant does not assume as a risk ordinarily incident to his employment any risk arising from the master's negligence.

With respect to the assumption of the risk as a known one, it cannot be held as a matter of law, contrary to the specific findings of the jury, that Murray assumed the risk, when the fact is that he was taken from his ordinary line of employment and put at a new work in a different department, without any notice or knowledge that the crane would be moved without warning, from which the danger resulted, and, if warned of its approach, he could have safeguarded himself. The plaintiff had the right to rely on the defendant using due care towards him, and defendant, taking him from his regular work in the machine shop department and putting him at a new and different work in the foundry department, surrounded by different conditions, had no right to assume that he would expect it to run the crane close enough to where he was working to imperil its safety, without warning adequate to enable him to protect himself from injury. Plaintiff testified:

"I did not, while I was upon the ladder, know that the crane was liable to be moved, or would be moved, down the track. I did not know of any of the movements of the crane, nor did I have any instructions, nor was I told by anybody that I was to look out for the crane. I was never told anything of that kind; I was never warned about it. I did not expect that the crane would be moved down by me while I was up there at work, unless they warned me. I had not been upon the ladder at any time when they moved the crane by me."

For the reasons indicated, the risk was not assumed as an obvious one. Railway Co. v. Brandon, 126 S. W. 703.

It is also asserted that Murray assumed the risk of the danger which resulted in his injury because he was left to arrange the details of the work in which he was engaged without supervision, and was therefore himself the vice principal of the master with respect to such matters. This cannot be admitted, for it is shown by the evidence that defendant's vice principal Barnes sent plaintiff to do the work and instructed him to do the work under the direction of the vice principal Brown and under his control and orders, and, in fact, plaintiff was following and obeying the instructions of the vice principal Brown, and did the work which Brown told him to do, and was under his general superintendence in so doing. It is true he selected a ladder to do the work, and, without being instructed as to detail of procedure, was en-

gaged in doing the work in the manner which has been detailed, but that was the usual, customary, and proper way for him to do it, and could, in fact, have been done in no other way. It is not apparent how he could have done the work without securing a ladder of sufficient length, placing it as a ladder would ordinarily be placed, and then ascending same to do the wiring. This assuredly would not make him a vice principal of the master with respect to the work which he was doing.

From what has been said in passing upon the issue of assumed risk as a known danger it will necessarily likewise follow that we cannot hold Murray guilty of contributory negligence. The jury found that the foreman, Brown, ordered the movement of the crane without warning to Murray of its intended movement, and that so doing was negligence. It is asserted that there was no evidence from which the jury could legitimately have found that it was negligence on the part of Foreman Brown to order or direct the employés of defendant working under him, to move the crane at the time of plaintiff's alleged injury without any warning to plaintiff of its intended movement. It will serve no purpose to detail the evidence bearing upon this issue. In our opinion, it amply supports the jury's findings.

The second proposition subjoined to the fourth assignment presents no reversible error. The error, if any, in submitting the issue of negligence with respect to the foundry building, as constituting an unsafe place to work, is harmless in view of the findings upon the issue of negligence in failing to warn.

The finding that Brown was a vice principal of defendant is assailed. A determination of the question is unnecessary. The negligence of the company in failing to provide due warning was the breach of a nondelegable duty, and Brown's status is a matter of no importance.

Affirmed.

## On Rehearing.

[3] In response to special issue No. 12, the jury found that the foreman, Brown, was a vice principal of defendant. The sufficiency of the evidence to support this finding is raised by the fifth assignment. It is admitted that Brown had authority to employ and discharge the men working under him in the foundry, but there is no evidence that he had such authority over Murray. The foreman of the machine shop, Barnes, was Murray's superior, and he is the man who sent Murray to the foundry to do the wiring, with instructions to find out from Brown what work had to be done. Brown testified that Murray was not a man of his crew, and he had no authority to discharge him. This is not contradicted. So it follows that Brown, as to Murray, was a fellow servant, and the fifth assignment is sustained. In the original opinion it was held that the status of the parties in this respect was immaterial in view of the fact of negligence with respect to the

nondelegable duty to warn Murray of the movement of the crane. Upon further consideration, the conclusion is reached that Brown's failure to warn Murray of the approach of the crane was not a breach of a nondelegable duty owing by the master to him. The negligence of Brown in this respect was that of a fellow servant.

[4, 5] As is shown in the original opinion, the jury, in response to issues 7, 8, 9, and 10, found that the part of the building on or in connection with which the ladder was resting was worn and infirm; and thereby unstable or unsteady, to the extent that when the crane was being moved with molten metal, as on the occasion in question, it would cause a ladder securely placed to be shaken from its position; that this condition of the building rendered the place not reasonably safe for plaintiff's work if the crane was loaded and moved, as it was on the occasion of his injury in question; that the defendant, by its agent in that behalf, knew of this, or would by the exercise of ordinary care have known thereof, within a reasonable time to have remedied the same before plaintiff's alleged injury; that such unsafeness of the place where plaintiff was working at the time was due to negligence on the part of the defendant, that is, to a failure on its part to exercise ordinary care to maintain such place in a reasonably safe condition; and in response to issues 13, 14, and 15 also found that the foreman, Brown, in the course of his service as vice principal for defendant, ordered or directed employés of defendant working under him to move the crane at the time of plaintiff's injury; that Brown gave the order for movement of the crane without warning to Murray of its intended movement and his act in so doing was negligence.

It is the nondelegable duty of the master to exercise ordinary care to provide the servant a reasonably safe working place. Though it is not clearly shown, yet our original opinion proceeded upon the theory that, in order to render reasonably safe the place where Murray was working, warning of the movement of the crane was necessary, wherefore the duty to warn was nondelegable; in other words, that under the facts of this case, the nondelegable duty to provide a safe working place could not be disassociated from, but comprehended the duty to warn. From this viewpoint the two duties shade into each other, and, unless it can be held that the master breached its nondelegable duty to provide Murray a safe working place, then the affirmance of the case heretofore entered is error.

This phase of the case, it seems to us, presents no little difficulty. The conclusion reached by the majority, however, is that the master did not breach his duty to provide a safe working place. The building, the posts and uprights, the crane, and its overhead track were all sufficient for the general foundry purposes for which they were designed, and in doing the wiring Murray se-

lected his own means and manner of doing the same. As to these details, he was uncontrolled by the master. If he had been controlled by the master in this matter, this phase of the case would perhaps be different. The safety of the working place under the facts of the case was as much dependent upon the means and way of doing the work adopted by Murray as upon any other fact, and, under this view, we think error was committed in affirming the case.

It would not be improper to reverse and render, but the ends of justice will perhaps better be served by reversing and remanding.

The motion for rehearing is granted, and the cause is reversed and remanded.

WALTHALL, J. (dissenting). My view of this case is fully expressed in the opinion of the court. I am of the opinion that Brown was a vice principal as to Murray, and that the facts and circumstances detailed in the evidence unquestionably made it the duty of appellant, through Brown, to warn Murray of, to him, the unknown danger of remaining on the ladder while the ladle of metal was being passed along; that the failure to give the warning was a breach of a nondelegable duty. I believe the motion for rehearing should be overruled, with possibly a more specific finding, or rather, expression as to the unusual danger to which Murray was exposed on account of the condition of the building and the use to which it was then being put by Murray in performing his duty.

I feel that it is unnecessary to do more than to enter my dissent.