**Mrs. W. E. (Ethel) SIMPSON, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 19690.**

United States Court of Appeals Fifth Circuit.

Sept. 19, 1963.

J. Q. Warnick, Jr., John H. Splawn, Jr., Lubbock, Tex., for appellant.

Barefoot Sanders, U. S. Atty., Melvin M. Diggs, A. W. Christian, Asst. U. S. Attys., Fort Worth, Tex., for appellee.

Before HUTCHESON, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is an appeal by the plaintiff, the widow of W. E. Simpson, from an award of damages in a wrongful death action which she contends is grossly inadequate.

On November 30, 1960, Simpson, while changing a flat tire, was struck and killed by a drunken government employee driving a government vehicle. Suit was brought against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b). The trial judge, hearing the case without a jury, found that both parties were negligent, but that there was insufficient proof to show by a preponderance of the evidence that the decedent's negligence was a proximate cause of his death. He awarded the plaintiff $14,000.

At the time of his death, Simpson, a farmer in Crosby County, Texas, was sixty years old and had a stipulated life expectancy of sixteen years. He and his wife, who was five years his junior, had been married thirty-six years and had four children, ranging in age from thirty-five to twenty-four. He was a good provider for his family and had furnished his children with an education for "as long as they would go" to school. Although his older son had not finished high school, Simpson had sent both daughters to Texas State College for Women at Denton for a period, and, at the time of the accident, the youngest child, a son, was attending Sul Ross College at Alpine. Mrs. Simpson testified that her husband frequently helped her around the house and she had relied upon him heavily for business advice.

Simpson's income tax returns for the years 1954 to 1960 showed a gross income ranging from $24,139.55 in 1958 to $14,059.97 in 1954. His net income was $4,501.25 in 1954, $5,239.29 in 1955, $9,783.16 in 1956, $5,342.81 in 1957, $7,456.90 in 1958, $6,013.65 in 1959, and $5,046.88 in 1960. The average net income for the seven year period was approximately $6,200. This was derived from farming two tracts of land. The larger one, 640 acres, was leased by Simpson and devoted primarily to growing cotton, and smaller amounts of wheat and maize. He owned the smaller, 80 acre tract, which, except for a 17 acre

field planted with cotton, he used for raising stock. He did most of the work on the farm himself. His wife testified that he "drove the tractor, checked the irrigation wells, did all the tending to the stock and things like that." He also kept milk cows, chickens, and hogs, primarily for consumption on the farm, and tended to them himself. He was in excellent health and, according to the testimony of his older son, worked about twelve hours a day.

The year following her husband's death, Mrs. Simpson attempted, with the aid of her two sons, to continue her husband's farming operations. Under her agreement with them, the son in college was to help during the summer and receive the produce from twenty-five acres of cotton plus $900 from the wheat and maize crops; Mrs. Simpson and the older boy would then divide the rest of the crop equally between them. As a result of overstraining herself while trying to keep the cattle fed during the winter, Mrs. Simpson was briefly hospitalized, and from then on was unable to do any hard physical labor on the farm. She was thus forced to sell the stock, and had to engage a hired hand to do the heavy work. It was estimated at the trial that in 1961 the cotton crop would yield a gross income of about $19,000 and a net income of $4,357.56, of which Mrs. Simpson's share would be $2,178.80. The wheat and maize crops each grossed over $2,000 and raised the total income of the partnership to $5,952.13. However, out of her total share of $2,976.06, Mrs. Simpson had to pay personal business expenses of $1,594.57 for the hired hand and cattle feed. Thus, her actual net income was $1,381.49.

Because of her inability to perform the hard labor entailed in farming, Mrs. Simpson was forced after this one year to drop the lease on the 640 acres which her husband had been farming *for the preceding nineteen years*. She sold her farming equipment to her two sons and moved to the eighty acre tract. This then became her sole means of support. The cotton acreage here netted approximately $780 in 1961, and Mrs. Simpson testified that about 30 additional acres could be planted in maize. She would be unable to do all the labor in growing these crops herself, however, and the record gives no indication that her income from this small tract would approach even the $1,381.49 which she made in 1961. She testified that she might be able to supplement her income by getting a job clerking in a dry goods store in Ralls, a nearby town, on busy days, but that she would be unable to get into town on rainy days because there was no paved road leading to the farm.

■■ In view of all this testimony, none of which was contradicted, the $14,000 award to the plaintiff for her pecuniary loss is shockingly small. Appellee urges, however, that the amount of damages in such a case is for the determination of the trier of fact and should not be disturbed upon appeal. In an action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), the law of the state where the cause of action arose "is binding as to measure of damages, as well as other features under the Tort Claims Act." United States v. Sutro, 9 Cir., 1956, 235 F.2d 499. See United States v. Compania Cubana De Aviacion, S.A., 5 Cir., 1955, 224 F.2d 811; Cook v. United States, 2 Cir., 1960, 274 F.2d 689; United States v. Hatahley, 10 Cir., 1958, 257 F.2d 920; Knecht v. United States, 3 Cir., 1957, 242 F.2d 929; United States v. Brooks, 4 Cir., 1949, 176 F.2d 482. Cf. Hoyt v. United States, 5 Cir., 1961, 286 F.2d 356. Thus we must look to the rule as enunciated by the Texas courts for the components and measure of damages in a wrongful death action under Art. 4677, Vernon's Ann.Texas Civ.Stat.

In Louisiana & A. Ry. v. Chapin, Tex. Civ.App.1949, 225 S.W.2d 614, 616, the Texas Court of Civil Appeals stated:

> "The statute in such cases provides that for wrongful injuries resulting in death 'the jury may give such damages as they think proportionate to the injury resulting from such

death.' Art. 4677, R.S. The difficulties of proof in such matters are well known to the legal profession. No rule is prescribed for making the calculations. Exact ascertainment is obviously not possible. Juries from their own knowledge, experience and sense of justice are called upon to fix the compensation with reference as far as possible to conditions existing at the time of death."

It is well settled that neither pecuniary benefits nor care and guidance "can be measured in dollars and cents with either mathematical or legal certainty." Union Transports, Inc. v. Braun, Tex.Civ.App. 1958, 318 S.W.2d 927, 938; Texas & N.O.R. v. Landrum, Tex.Civ.App., 264 S.W.2d 530, 539. But these and similar statements by the Texas courts, see, e. g., Texas Consolidated Transportation v. Eubanks, Tex.Civ.App.1960, 340 S.W.2d 830; Rowan & Hope v. Valadez, Tex. Civ.App.1953, 258 S.W.2d 395 must be considered in the context in which they arose. In each of these cases, the courts have used language indicating the wide discretion of the trier of fact to set awards under Article 4677, Vernon's Ann. Texas Civil Statutes, in order to justify awards which were not limited strictly to a computation of provable pecuniary loss. In Texas Consolidated Transportation Co. v. Eubanks awards totalling $162,500 to the widow and minor daughter of a sixty-three year old railroad engineer who was earning $9,076.87 per year were upheld. Again, in Union Transports, Inc. v. Braun, the plaintiff was awarded $65,000 for the death of his wife and their two minor children received smaller awards. In commenting upon the objection that the award to deceased's husband was almost twice as much as he would have received had his wife continued doing secretarial work for the remainder of his expected life span and paid her entire salary to him, the court pointed out that "[t]he earning capacity of the deceased * * * is not the *sole* basis for damages in such cases" and that the award was not out of line with those given in similar cases. (Emphasis supplied.) 318 S.W.2d at 937. Similarly, the court in Rowan & Hope v. Valadez, upheld an award of $22,924 to the widow of a fifty-nine year old ranch laborer who contributed about fifty dollars a month in cash and twenty-five dollars per month in rations to his family's upkeep. The court stated:

> "The sum of $50 per month for eighteen years, the life expectancy of the deceased, will not total the sum awarded by the jury, but the members of the jury in fixing the pecuniary loss were not restricted to a mathematical formula. They could properly consider and credit the evidence that Jose Maria B. Valadez had maintained a family for a period of twenty-five years, provided for the sustenance of the members thereof, counseled and advised with his wife and children and had provided educational facilities for the latter, as their needs required. They were authorized to estimate the value of these contributions and services." 258 S.W.2d at p. 400.

These and other decisions make it abundantly clear that although the jury is not *limited* in wrongful death actions to a computation of pecuniary loss based upon the projection into the future of deceased's past earnings, this is the basic or primary element of such awards. The authorities cited by the appellees make the same point:

> "When a wife sues for wrongful death of her husband, the measure of damages in such sum of money as, if presently paid, *will reasonably compensate her for the pecuniary loss sustained through death,* excluding any allowance for loss of companionship or as a solace for grief." (Emphasis supplied.) 17 Tex.Jur.2d p. 602. "Every father and husband has for his wife and children a pecuniary value *beyond the amount of his earnings by his labor or vocation.*" 17 Tex.Jur.2d p. 613. See Industrial Fabricating Co. v. Christopher, Tex.Civ.App.1949, 220 S.W.2d 281, 290.

Thus the Texas courts have reversed as inadequate awards which did not properly take this factor of past earnings into account. See e. g., Burns v. Merchants' & Planters' Oil Co., 1901, 26 Tex.Civ.App. 223, 63 S.W. 1061. Cf. Davis Transport, Inc. v. Bolstad, Tex.Civ.App.1956, 295 S.W.2d 941.

This is not to say that there is a fixed rule which requires an award in a case such as this to equal, at the minimum, the deceased's past income projected for his life expectancy. Indeed, some Texas courts do not require the jury to utilize mortality tables in making its award, see, e. g., Texas Consolidated Transportation Co. v. Eubanks; but see Union Transports, Inc. v. Braun. At the very least, however, the award should bear some ascertainable relation to the pecuniary benefits which the decedent's spouse or child might reasonably have expected to receive had the wrongful death not occurred.

Except for a relatively brief bout with an ulcer over 20 years before his death, Simpson had always been in perfect health and had no intention of retiring from farming. His income averaged about $6,200 a year, and the undisputed evidence is that all of this went toward the upkeep of his home and farm. His wife, therefore, could have expected to count on approximately this amount for living expenses for some time to come. At the very minimum, however, she was entitled under Texas community property law to consider half this sum, or $3,100 a year, hers. Thus, even if she could continue to make by her own efforts as much as she cleared in 1961—i. e. about $1,400—which is highly doubtful, she would still have lost more than $1,700 per year in her own personal income. This figure, of course, is far removed from the actual cash income which she would have received for use in running the household had her husband not been killed, and it ignores the very important consideration that she would still have to work herself in order to raise the $1,700 to the $3,100 per year which, before her husband's death, was legally hers. Moreover, this calculation of damages does not even purport to take into consideration her loss of her husband's counsel and guidance, which is compensable under Texas law, e. g., Texas Consolidated Transportation Co. v. Eubanks; Rowan & Hope v. Valadez, or the amount added to her real income by her husband's activities in raising animals for farm consumption, see e. g., Davis Transport, Inc. v. Bolstad, or the value of his services around the house, see e. g., Union Transports, Inc. v. Braun. More important, it does reduce the calculation of her pecuniary loss by the amount of income which she herself can earn, although this is normally an improper factor to take into consideration. Welch v. Ada Oil Co., Tex.Civ.App.1957, 302 S.W.2d 175, 180. Thus, even computed as conservatively as possible, the absolute minimum amount which could compensate Mrs. Simpson for the pecuniary loss entailed by the death of her husband would be $27,000.

Texas courts have long recognized the extent of their supervisory authority over the fairness of verdicts under Art. 4677, Vernon's Ann.Tex.Civ. Statutes, stating that

> "In case of abuse and the return of a grossly excessive or inadequate award, this Court will intervene, in accordance with recognized principles of law." Rowan & Hope v. Valadez, Tex.Civ.App.1953, 258 S.W. 2d 395, 401.

Nor have the Texas courts been hesitant to exercise this supervisory intervention. See, e. g., Continental Bus System, Inc. v. Toombs, Tex.Civ.App.1959, 325 S.W. 2d 153 (judgment of $50,000 excessive by $20,000), Union Transports, Inc. v. Braun (two remittiturs of $12,500 ordered), Davis Transport, Inc. v. Bolstad, (remittitur ordered by trial judge was improper; judgment reformed to accord with original award), Burns v. Merchants' & Planters' Oil Co. (grossly inadequate jury award reversed and remanded for a new trial).

This Court is no more powerless than a state court to order a remittitur for a grossly excessive verdict or to cor-

rect a grossly inadequate one. We pointed out in Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486, 487, which involved the adequacy of a trial judge's award in a personal injury action, that the Court could reverse such a finding of fact

> "(1) where the findings are without substantial evidence to support them; (2) where the court misapprehended the effect of the evidence; and (3), if, though there is evidence which if credible would be substantial, the force and effect of the testimony considered as a whole convinces that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case."

We believe this case falls within the second exception listed above. The trial judge, in rendering his award, apparently thought that the plaintiff would lose no more than $990 a year in income because of the death of her husband. If only her net profit on the cotton crop for 1961 is considered and no deduction is allowed for the hired man's wages, this is the net loss arrived at. The confusion in the record, which at one point mistakenly indicates that $2,178.80 was Mrs. Simpson's total net income lends credence to the appellant's suggestion that this was, in fact, the method used. If so, the verdict was clearly based upon a misapprehension of the facts, and therefore subject to corrective action by this Court.

The question remains whether the case should be remanded to the trial judge or whether this Court can itself reform the award. This is not a new problem in this Circuit. In United States v. Compania Cubana De Aviacion, S.A., which was likewise a wrongful death action heard without a jury under the Federal Tort Claims Act, we raised two awards by $10,000 each because the Court, after reading the record, was left "with the definite and firm conviction that in making [the awards] the district judge misapprehended the law or the evidence or both." While agreeing with the government that, under the Florida decisions there applicable, "no fixed pattern [for awards]. may be set, no rule of thumb measurement employed, and that the district court has wide discretion in reaching an informed judgment in cases of this kind," we were nonetheless "of the opinion that in making the awards in these cases the district judge has measured over meagerly, has too greatly minimized the favorable, too greatly manified the unfavorable, considerations controlling here and that, if his judgments were reformed to award in the deSalas case $25,000 and in the Pacheco case $30,000, they would more nearly approximate what is right and just under the evidence in this case." 224 F.2d at 823–824.

Where there are firm guidelines establishing the basic elements of the award and it can be computed with some degree of certainty as easily by the appellate court as by the trial judge, it would be mere wasted motion to remand the cause for new findings. Thus the Ninth Circuit, in raising a judgment from $12,525.05 to $35,092.05 for damages incurred as a result of a subcontractor's default, stated:

> "As a further preliminary statement to our discussion of this case we observe that ordinarily we would remand the matter back to the trial judge for more explicit findings. However, as this case is now before us we feel that we are in as good a position to determine the issues involved on the record before us as would be the trial judge on remand. Those issues arise out of and are concerned with figures and arithmetical calculations. In view of the foregoing, and to the end that useless motion and delay be eliminated we will determine the case at this time on its merits, being of the opinion that no good would be served by directing a remand for further and more specific findings." Dale Benz, Inc., Contractors v. American Casualty Co., 9 Cir., 1962, 303 F.2d 80, 82.

In the present case, we do have guidelines which permit us to arrive at

an award with some degree of assurance. The trial judge, in his discretion, assigned no monetary value to the loss of Mrs. Simpson's counsel and advice and other farming or household activities which produce no actual cash income. Insofar, therefore, as the award was to be based only upon the loss of monetary income—and this confined strictly to what was legally Mrs. Simpson's—we have as complete a record before us as the trial judge and have been able to make the same mathematical calculations. As we indicated above, the minimum award which is consonant with the pecuniary benefits the plaintiff might reasonably have expected to receive is $27,000. The trial judge allowed $2,317.75 for funeral expenses which are uncontested. The cause is therefore remanded with directions to enter judgment for $29,317.75.